793 N.E.2d 238 (2003)
R.G., Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 49A02-0212-JV-1044.
Court of Appeals of Indiana.
August 13, 2003.
Patricia Caress McMath, Indianapolis, IN, for Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
MATHIAS, Judge.
R.G. admitted to two instances of child molesting, infractions that would be Class C felonies if committed by an adult. After a juvenile court adjudicated R.G. a delinquent child, the State moved for a hearing to determine whether R.G. should be placed on the sex offender registry. Following the hearing, the juvenile court ordered R.G. to register as a sex offender. *239 R.G. now appeals, alleging that there was not clear and convincing evidence presented at his hearing that indicates he is likely to commit a future sex offense. Concluding, sadly, that there was sufficient evidence to support the juvenile court's finding, we affirm.

Facts and Procedural History
On May 10, 2001, sixteen-year-old R.G. sexually molested a nine-year-old boy. The State alleged R.G. to be a delinquent child, and R.G. admitted to the offense pursuant to a plea agreement. On July 27, 2001, R.G. was released to his mother's custody, subject to electronic monitoring. On August 8, 2001, while awaiting a dispositional hearing for his prior offense, R.G. sexually molested a five-year-old girl. The State, again, alleged R.G. to be a delinquent, and R.G., again, admitted to the offense pursuant to a plea agreement.
The juvenile court gave R.G. a suspended commitment and made him a ward of the Office of Family and Children for placement in the Resolute Residential Treatment Facility ("Resolute"). R.G. resided at Resolute from September 10, 2001 to September 6, 2002. During this period, R.G. was "sexually inappropriate" with three of his peers. While undergoing treatment at Resolute, R.G. disclosed twenty-one previous sexual partnersincluding three children and one passed-out woman. It was also discovered that within a few weeks from the completion of his stay at Resolute, R.G. had been soliciting other residents to "sexually act out with him." Tr. p. 7. Finally, as R.G.'s discharge from Resolute neared, he became less willing to admit to and talk about his sexual feelings because he did not want to "mess things up." Ex. Vol. 1 p. 3.
According to R.G.'s Resolute discharge report, prepared by clinician Lindsey Lund, R.G. had learned all that Resolute offered regarding his sexual dysfunction but showed a reluctance to apply what he had learned. Ex. Vol. 1 pp. 2-4. The report concluded in pertinent part: "due to his level of maturity and his demonstrated pedophilic interests, which characteristically cannot be eliminated, as well as his pleasant and outgoing personality, which may be viewed as safe and accepting to children, [R.G.] remains at a high risk to the community and for sexual recidivism." Ex. Vol. 1 p. 4.
During the first six weeks after leaving Resolute, R.G. was only permitted to leave his residence for GED classes, substance abuse classes, and meetings with therapists. After this period, R.G. was allowed additional freedoms, such as being allowed to travel alone and to solicit employment. R.G. was not allowed to have contact with children during this period. Tr. p. 12.
In the two months between R.G.'s release from Resolute and his sex registry hearing, R.G. met with therapists Angela Minker ("Minker") and Niko Squadroni ("Squadroni"), who testified at R.G.'s sex offender registration hearing concerning R.G.'s behavior since his release from Resolute. Both therapists testified that they observed nothing in R.G.'s behavior to suggest that he was a high risk to re-offend. Tr. pp. 13, 17. Dr. Dovid Ofstein, who worked with R.G. while at Resolute, testified that R.G. remained a high risk for re-offending.
Based on this testimony and R.G.'s Resolute record, the trial court ordered R.G.'s name to be placed on the sex offender registry. R.G. now appeals.

Discussion and Decision
The Sex Offender Registration Act requires an offender to register with local law enforcement authorities in the area where the offender resides. Ind.Code Ch. 5-2-12 (2002). In pertinent part, the statute defines an "offender" as:

*240 A child who:
(A) is at least fourteen (14) years of age;
(B) is on probation, is on parole, or is discharged from a facility by the department of correction as a result of an adjudication as a delinquent child for an act that would be an offense described in subdivision (1) or (2) if committed by an adult; and
(C) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subdivision (1) or (2) if committed by an adult.
Ind.Code § 5-2-12-4(3) (2002).
At issue in this case is the statute's requirement that the juvenile court determine, by clear and convincing evidence, whether R.G. is likely to be a repeat sex offender. See K.J.P. v. State, 724 N.E.2d 612, 614 (Ind.Ct.App.2000), trans. denied (citing In re G.B., 709 N.E.2d 352 (Ind.Ct. App.1999)).[1]
When judging the sufficiency of the evidence supporting a decision to place a juvenile on a sex offender registry, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, this court looks to the evidence and the reasonable inferences that can be drawn therefrom that support the juvenile court's decision, and we will affirm a juvenile court's decision to place a juvenile on a sex offender registry if evidence of probative value exists from which the juvenile court could find by clear and convincing evidence that the elements of Indiana Code section 5-2-12-4 have been met. Thus, we will affirm the decision to place a juvenile on a sex offender registry unless it may be concluded that no reasonable fact finder could find the elements of Indiana Code section 5-2-12-4 to have been proven by clear and convincing evidence.[2]
Applying the above-stated standard of review, we find sufficient evidence to support the juvenile court's decision. Leslie Lund indicated that R.G. remained a high risk to the community and for sexual recidivism. Ex. Vol. 1 p. 4. The Resolute discharge report also suggested that R.G., toward the end of his treatment, became less open about his problems in order to create an appearance that he is cured. Ex. Vol. 1 p. 3. Finally, Dr. Dovid Ofstein testified that he believed R.G. remained a high risk for re-offending. Tr. pp. 6, 9.
*241 This evidence is sufficient to establish, under a clear and convincing quantum of proof, that R.G. is likely to re-offend.
R.G. bases his claim that he is not likely to be a risk to the community on the testimony of Minker and Squadroni, who indicated that they observed nothing in R.G.'s behavior to suggest that he was a high risk to re-offend. Tr. pp. 13, 17. However, as State aptly points out, (1) Minker and Squadroni did not have the benefit of observing R.G. in a residential setting, (2) due to the restrictions placed upon R.G. after his release from Resolute, R.G. did not have the opportunity to exhibit bad behavior while under Minker and Squadroni's supervision, and (3) as Minker and Squadroni acknowledge, the real test for R.G.'s commitment not to re-offend will come now that R.G. has turned eighteen and therapy and supervision are no longer required. Tr. pp. 14-15, 18. More importantly, considering Minker and Squadroni's assertions invites us to reweigh the evidence, which we will not do.

Conclusion
There was clear and convincing evidence to support the trial court's decision to require R.G. to register as a sexual offender. Accordingly, we affirm.
KIRSCH, J., and MAY, J., concur.
NOTES
[1] "Clear and convincing" is a stricter quantum of proof than the "preponderance of the evidence" quantum. Id. (citing Estate of Reasor v. Putnam County, 635 N.E.2d 153 (Ind. 1994)).
[2] In an otherwise excellent brief, the State fails to offer a standard of review to guide our decision and instead relies solely on the clear and convincing evidence quantum expounded by K.J.P., 724 N.E.2d at 615-16. "Clear and convincing" is the quantum of proof required to place an individual on a sex offender registry, not a standard of review that mandates the degree of deference that this court must give to the juvenile court's decision.

A possible reason for the State's omission may be K.J.P.`s failure to include a standard of review while conducting its sufficiency review of a sex offender registry decision, and the State was merely "covering its bases" in the event that this court should not apply the standard of review traditionally applied to sufficiency cases. Though no standard of review is listed in K.J.P., we see no reason to depart from the well-settled standard that is regularly applied to sufficiency cases. See C.T.S. v. State, 781 N.E.2d 1193, 1200 (Ind.Ct. App.2003).