In the Matter of Z.H., Appellant–Respondent,

v.

STATE of Indiana, Appellee–Petitioner.

No. 03A01–0601–JV–18.

Court of Appeals of Indiana.

July 18, 2006.

Transfer Denied Oct. 19, 2006.

934 ■

Donald J. Dickherber, Columbus, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Mara McCabe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Z.H. appeals from the juvenile court's order requiring him to register as a sex offender. Specifically, Z.H. raises the dispositive argument that the State did not establish by clear and convincing evidence that he is likely to repeat an act that would be a sex offense if committed by an adult. Finding that the State did not meet its burden, we reverse the judgment of the juvenile court.

### FACTS

On May 14, 2003, true findings were entered against Z.H., who was born on April 1, 1986, as to child molesting, a class B felony if committed by an adult, intimidation, a class C felony if committed by an adult, and attempted child molesting, a class C felony if committed by an adult. The allegations and petition to have Z.H. adjudicated to be a delinquent child arose after Z.H. and his brother molested a twelve-year-old neighbor. On June 26, 2003, the juvenile court placed Z.H. on probation for two years under the special condition that he complete treatment at Resolute Center (Resolute), an inpatient treatment facility that provides treatment for adolescent male sex offenders.

On July 1, 2003, Z.H. was admitted to Resolute for diagnosis and evaluation. He was seventeen years old, with an I.Q. of 58 and a general level of cognitive functioning in the Mentally Deficient Range, at that time. Over the course of Z.H.'s time at Resolute, the center provided the juvenile court with monthly progress reports detailing Z.H.'s treatment and improvement or lack thereof.

On March 11, 2004, the juvenile court entered an order in which it found that Z.H. "is accomplishing many of his treatment goals. The progress is slow and somewhat inconsistent as the child struggles with truthfulness and distinguishing between appropriate and inappropriate behavior." Appellant's App. p. 45. On June 16, 2004, the juvenile court entered another order, finding that Z.H. "continues to show progress in his treatment plan and goals. It should be noted that satisfactory completion of the program may occur at a

slower rate due to the child's educational and cognitive abilities." *Id.* p. 64.

On September 15, 2004, the juvenile court found as follows:

[s]ince the last review, Resolute found that the child had reached the maximum benefit from its program and a transition was made to Success Group Home. This program is designed to be a transition to independent living. It is too early to determine if independent living is appropriate for [Z.H.] and Success Group Home requests additional time for assessing [Z.H.]. Mr. Baldwin reports an incident that occurred since the child's placement in the group home, that would be indicative of being high risk to return to this community, at this time.

*Id.* p. 84. There are no documents in the record explaining why, precisely, Z.H. was transferred to Success Group Home (Success). Additionally, there is no further description in the record about the "incident" referred to in the juvenile court's order.

On December 16, 2004, the juvenile court entered its first order following Z.H.'s transfer to Success, ordering Z.H. to remain at Success for another two to three months to prepare to transition to his grandmother's home in Terre Haute. Once in Terre Haute, Z.H. would be referred to a mental health agency and continue on probation until June 26, 2005.

On February 28, 2005, Dr. Dovid Chaim Ofstein sent the juvenile court a monthly progress report in which he observed that

[s]ince [Z.H.] is felt to be at high risk for sexual offense recidivism, it is recommended that he be evaluated to determine if he meets the criteria for placing an adolescent on the sexual offender registry. If this should be the case, the court should consider placing him on that registry.

*Id.* p. 99. In its order following receipt of Dr. Ofstein's progress report, the juvenile court noted that "Success recommends that a determination be made as to whether [Z.H.] meets the criteria for placement on the sexual offender registry." *Id.* p. 95. The court ordered that Z.H. remain at Success until the end of the school year, at which time he would transition to his grandmother's home with a safety plan in place.

On April 29, 2005, the State filed a petition to require Z.H. to register as a sex offender. On May 25, 2005, the juvenile court entered the following order on review hearing:

The child has completed the treatment goals as established through [Success]. There has been no further acting out behavior since the last review and the school year has now concluded for [Z.H.] [Success] and probation both recommend that the child be discharged from residential placement and complete probation in the home of his grandmother.

*Id.* p. 107. The juvenile court ordered that Z.H. be released from Success for placement with his grandmother.

On August 22, 2005, the juvenile court held a hearing on the State's petition. Dr. Ofstein did not appear at the hearing, but a probation officer testified that Dr. Ofstein's reports indicated that he was "insistent" and "very insistent" that Z.H. be placed on the registry. Tr. p. 17–18. The clinical director of Resolute, Dr. Michael Kenny, also testified at the hearing.

On September 29, 2005, the juvenile court issued an order requiring Z.H. to be placed on the sex offender registry, finding, among other things, that Dr. Ofstein "strongly believed that [Z.H.] should be placed on the sexual offender registry." *Id.* p. 117. Ultimately, the juvenile court found that "[t]here is clear and convincing evidence that the juvenile, [Z.H.], is likely to repeat an act that would be a sex of-

fense if committed by an adult." *Id.* Z.H. now appeals.

## DISCUSSION AND DECISION

■ Z.H. argues that the trial court erred in concluding that there is clear and convincing evidence that he is likely to repeat an act that would be a sex offense if committed by an adult. When judging the sufficiency of the evidence supporting a decision to place a juvenile on a sex offender registry, we neither reweigh the evidence nor judge the credibility of the witnesses. *A.O. v. State*, 837 N.E.2d 219, 221 (Ind.Ct.App.2005). Rather, we look to the evidence and the reasonable inferences that can be drawn therefrom that support the juvenile court's decision, and we will affirm a juvenile court's decision to place a juvenile on a sex offender registry unless it may be concluded that no reasonable factfinder could find the elements of Indiana Code section 5–2–12–4 to have been proven by clear and convincing evidence. *Id.*

An "offender" who resides in Indiana must register as a sex offender. Ind.Code § 5–2–12–5(a)(1). Among other things, "offender"

(b) ... includes a child who has committed a delinquent act and who:

(1) is at least fourteen (14) years of age;

(2) is on probation, is on parole, is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31–9–2–115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that

would be an offense described in subsection (a) if committed by an adult; and

(3) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

*Id.* § –4(b). Child molesting is included in the offenses described in subsection (a). *Id.* § –4(a)(3).

■ Here, the only issue is whether the State met its burden of proving by clear and convincing evidence that Z.H. is likely to repeat an act that would be a sex offense if committed by an adult. The focus of this inquiry is whether the juvenile has been rehabilitated as the result of treatment received in the facility from which he has been discharged. *B.J.B. v. State*, 805 N.E.2d 870, 874 (Ind.Ct.App.2004). If the juvenile has, in fact, been rehabilitated, then "there cannot be clear and convincing evidence that the juvenile is likely to re-offend and the juvenile cannot be placed on the sex offender registry." *Id.*

Turning to the evidence presented by the State in support of its petition, we note that the evidence falls into two categories: monthly progress reports from Resolute and Success, and testimony from Z.H.'s probation officer and Resolute's clinical director. We must focus on whether Z.H. has been rehabilitated as a result of the treatment at Success, the facility from which he was discharged. *Id.* Thus, although the record contains testimony, progress reports, and court orders regarding Z.H.'s time at Resolute,[1] our focus

---

1. We note, however, that those reports and orders, while certainly establishing that Z.H. was a troubled young man, also show Z.H. making "progress in his treatment," doing well "in following the general rules and expectations of the program," appellant's app. p. 36–37, "accomplishing many of his treat-ment goals," *id.* p. 45, and continuing "to show progress in his treatment plan and goals," *id.* p. 64. The juvenile court also cautioned that "satisfactory completion of the program may occur at a slower rate due to the child's educational and cognitive abilities." *Id.*

must remain on the success of Z.H.'s treatment at Success.

Turning first to the documents provided by the State in support of its petition, we observe that in September 2004, the juvenile court entered an order in which it observed that Z.H. had "reached the maximum benefit" from Resolute and had been transferred to Success. Appellant's App. p. 84. There is no further explanation in the record of why this transfer occurred. Thus, there is no support in the record for the juvenile court's finding in the order being appealed that Z.H.'s release from Resolute "was not considered a successful discharge." *Id.* p. 117.

The progress reports from Success, and the court orders based thereon, reveal the following information:

● December 2004: juvenile court finds that "independent living does not appear to be a viable option for [Z.H.] The level of supervision and monitoring required for [Z.H.] exceeds the group home protocols. [Z.H.] is currently non-compliant with the rules placed on him and as a result, remains at high risk for engaging in sexually inappropriate behaviors." *Id.* p. 87.

● January 2005: progress report from Dr. Ofstein indicates that Z.H. is still continuing to attend the Aftercare Group at Resolute even though he is not required to. Additionally, Z.H. "does not appear to have internalized the learning to which he was exposed, either at [Resolute] or since coming to [Success].... [Z.H.] continues to demonstrate poor decision-making skills, thus raising his level of risk for sexual recidivism.... It is noted that [Z.H.] appears to have made some gains in his treatment, but his blatant disregard for his own well-being and that of others suggest that he remains a danger to himself and others at this time.... Although he is assessed at being at a high risk for recidivism, [Z.H.] has likely attained maximum benefit from his treatment at [Success]." *Id.* p. 124.

● February 9, 2005: progress report from Dr. Ofstein indicates that Z.H.'s "limited cognitive abilities often limit the amount of time and material that can be addressed in an individual session." *Id.* p. 121. Report further indicates that Z.H. "seems to operate from the pleasure principle. [Z.H.] has great difficulty accepting 'no' for an answer and manipulates everyone to try to get what he wants.... While he has made some progress over the course of his treatment, [Z.H.] is very inconsistent in his application of his learning." *Id.* p. 122. Finally, "[Z.H.] is felt to be at high risk for recidivism and will require almost constant monitoring and supervision in the community to reduce this level of risk.... It is ... recommended that the criteria for placing an adolescent on the state sex offender registry be reviewed to determine if he meets the legal requirements for adding him to this list." *Id.* p. 122.

● February 28, 2005: progress report from Dr. Ofstein indicates that Z.H. "is continuing to ignore and violate rules and expectations at will." *Id.* p. 99. Moreover, since Z.H. "is felt to be at high risk for sexual offense recidivism, it is recommended that he be evaluated to determine if he meets the criteria for placing an adolescent on the sexual offender registry. If this should be the case, the court should consider placing him on that registry." *Id.*

There is nothing in the record documenting Z.H.'s progress between February and May 25, 2005, at which time the juvenile court entered the following order:

The child has completed the treatment goals as established through [Success]. There has been no further acting out behavior since the last review and the school year has now concluded for [Z.H.] [Success] and probation both recommend that the child be discharged from residential placement and complete probation in the home of his grandmother. *Id.* p. 107. At that time, the juvenile court ordered that Z.H. be released from Success for placement with his grandmother in Terre Haute.

The progress reports and court orders in the record between December 2004 and February 2005 indicate Z.H.'s significant difficulties complying with the rules, internalizing his therapy, and high risk of recidivism. But because we must focus on whether Z.H. was rehabilitated as a result of his treatment at Success, we are compelled to examine his condition at the time of his discharge. At that time, the only evidence in the record establishes that Z.H. had "completed the treatment goals," that Z.H. had exhibited "no further acting out behavior since the last review," and that Success and Z.H.'s probation officer both recommended that Z.H. should be discharged from Success. *Id.* Thus, we cannot say, based solely on the documentary evidence in the record, that Z.H. was not rehabilitated as a result of his treatment at Success, or that the State has met its burden of establishing by clear and convincing evidence that Z.H. is likely to repeat an act that would be a sex offense if committed by an adult.

Turning next to the testimony offered by the State in support of its petition, we first turn to the testimony of Alex Baldwin, Z.H.'s probation officer. Baldwin testified that it was his opinion that Z.H. should be placed on the sex offender registry. Tr. p. 14. Baldwin based his opinion, in part, on his belief that the progress reports authored by Dr. Ofstein indicated that the doctor was "insistent" and "very insistent" that Z.H. be placed on the registry. Tr. p. 18. But as noted above, while Dr. Ofstein's reports showed a grave concern about the high risk that Z.H. would reoffend, his reports did *not* insist that Z.H. be placed on the registry. Rather, the progress report stated that Dr. Ofstein "recommended that he be evaluated to determine if he meets the criteria for placing an adolescent on the sexual offender registry. If this should be the case, the court should consider placing him on that registry." Appellant's App. p. 99. Thus, Baldwin based his opinion, at least in part, upon an apparently faulty interpretation of Dr. Ofstein's recommendation.

We turn next to the testimony of Dr. Mike Kenny, the clinical director of Resolute. Initially, we note that Dr. Kenny had little or no contact with Z.H. during his time at Success. Tr. p. 20. Inasmuch as we must focus on whether Z.H. was rehabilitated at the end of his time at Success, therefore, Dr. Kenny's testimony is largely irrelevant. To the extent it is relevant, however, we observe that while Dr. Kenny certainly voiced concerns about Z.H.'s conduct and mental state, he also indicated that he disagreed with Dr. Ofstein on certain conclusions:

Q. Dr. Offstein [sic] reported on February 9th that [Z.H.] has a problem considering the consequences of his actions and is unable to put himself in the role of others and operates on a pleasure principle. What do these types of reported activities say about his risk of re-offending?

A. I would say it kind of, in my dealing with [Z.H.], that I didn't see him always like that. I feel like [Z.H.], at some degree, does have an understanding of the consequences of his behaviors given some of the issues that have happened. He has

some sexual maladaptive issues, but in the terms of my dealings with him, he's shown that he can handle those to some degree. . . . I do think that he does understand what is right and wrong.

Tr. p. 29. Furthermore, Dr. Kenny was reluctant to voice an opinion that Z.H. was at a high risk of reoffending, testifying as follows:

Q  . . . . can you say that it's likely that he's going to repeat the acts that he repeated before?

A.  I can't say, you know, he learned a lot and he did well, to a certain degree. I think there is some concern of the amount of follow through there was going to be post-release, not only, also due to [Z.H.'s] kind of educational deficits. I mean, we had a lot of supervision. He did well with the staff. And anytime you reduce that amount of supervision, it's kind of worrisome.

Tr. p. 33. Finally, while the State points to certain statements made by Dr. Ofstein that indicate that Z.H. had shown aggressive behavior, Dr. Kenny—the State's own witness—testified that

for the majority of the time that he was at Resolute and from what I know from Success, he was not aggressive. He was pretty compliant. So, it's in his history, which lends that it's possible, but I can also say that for the better part of two (2) years, we didn't have any aggressive actions from [Z.H.] He didn't demonstrate those.

Tr. p. 33. Thus, the State's only expert witness disagreed with Dr. Ofstein on some central matters regarding Z.H.'s behavior and refused to opine that Z.H. was likely to reoffend.

The expert at the heart of the State's case, Dr. Ofstein, who authored all of the progress reports from Z.H.'s time at Success and first suggested that the juvenile court consider placing Z.H. on the sex offender registry, did not testify at the hearing. The State argues that "Z.H. was free to subpoena Dr. Ofstein if he believed that he would offer evidence favorable to Z.H.'s position or if he believed that Dr. Ofstein's reports were ambiguous or misleading." Appellee's Br. p. 11. But Z.H. "was not required to persuade the juvenile court to keep him off the registry; rather, . . . the State bore the burden of proving, by clear and convincing evidence, that [the juvenile] was likely to commit another sex offense." *B.J.B.*, 805 N.E.2d at 874. Thus, it was not incumbent upon Z.H. to call Dr. Ofstein to cast doubt upon the progress reports; it was incumbent upon the State to support its case with clear and convincing evidence.

Here, given Baldwin's apparent misinterpretation of Dr. Ofstein's comment in the progress report and Dr. Kenny's disagreements with Dr. Ofstein, the State would have been well served to have called Dr. Ofstein as a witness. But the State did not, and we only have the comments made by Dr. Ofstein in the monthly progress reports to explain his opinions regarding Z.H. Given the lapse in time in the progress reports, the juvenile court's conclusion that Z.H. had met his treatment goals, and the lack of testimonial evidence supporting its position, we conclude that the State has not met its burden of proving with clear and convincing evidence that Z.H. is likely to repeat an act that would be a sex offense if committed by an adult.

As to the juvenile court's order granting the State's petition, we observe that a number of findings are based upon Z.H.'s time at Resolute, which has little or no impact on whether he was rehabilitated following his treatment at Success. Moreover, its findings regarding Z.H.'s time at Success are based solely upon the progress reports ending in February 2005, three

months before Z.H.'s discharge from Success and the juvenile court's finding that he had completed his treatment goals and had stopped acting out. Moreover, the juvenile court found, presumably based upon Baldwin's testimony, that "Dr. Ofstein strongly believed that the juvenile should be placed on the sexual offender registry." Appellant's App. p. 117. But as noted above, nothing in Dr. Ofstein's remarks in the progress reports indicates such a "strong belief," rather, the reports suggest that the juvenile court should consider whether Z.H. met the legal criteria—which includes likelihood to reoffend. Thus, we conclude that the juvenile court erred in concluding that there is clear and convincing evidence that Z.H. is likely to repeat an act that would be a sex offense if committed by an adult.[2]

The judgment of the juvenile court is reversed.

SULLIVAN, J., and MAY, J., concur.

---

2. Z.H. also argues that the trial court erred in refusing to apply the Indiana Rules of Evidence to the hearing on the State's petition. Inasmuch as we have considered all of the evidence presented by the State without regard to compliance with the rules of evidence, and concluded that the State did not meet its burden, we need not answer this question.

We note, however, that it is well recognized that "there must be an inquiry at a *full evidentiary hearing* before a juvenile may be placed on the sex offender registry." *B.J.B.*, 805 N.E.2d at 873 (emphasis added). In *B.J.B.*, we acknowledged that requiring an adult criminal sex offender to place his or her name on the sex offense registry is not a "punishment" because much of the information contained in the registry is already in the public domain and accessible to the public. *Id.* We further observed that "[t]he identity of juvenile delinquents, however, is often not a matter of public knowledge because of the underlying policy of rehabilitating, not punishing, juveniles." *Id.* Given these considerations and the general policy of rehabilitation underlying the juvenile delinquency system, therefore, we concluded that there must be a "full evidentiary hearing" before a juvenile may be placed on the sex offender registry. While it is true that "full evidentiary hearing" is not defined, the clear import of the phrase is that the rules of evidence must apply.

Additionally, we note that while the rules of evidence explicitly do not apply to "preliminary juvenile matters," the rule is silent regarding all other juvenile proceedings. Ind. Evid. Rule 101(c)(2). Under these circumstances, we conclude that the Indiana Rules of Evidence must apply to the full evidentiary hearing afforded a juvenile facing a State petition to place the juvenile on the sex offender registry.