*Lloyd v. State,* 677 N.E.2d 71, 74–75 (Ind. Ct.App.1997) (footnote omitted), *reh'g denied, trans. denied.*

**B.W., Appellant–Respondent,**

v.

**STATE of Indiana, Appellee–Petitioner.**

**No. 15A01–0903–JV–123.**

Court of Appeals of Indiana.

July 14, 2009.

---

Jeffrey E. Stratman, Aurora, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

B.W. appeals the juvenile court's order requiring him to register as a sex offender. Specifically, he argues there was not sufficient evidence to support such an order. Concluding there was clear and convincing evidence finding B.W. is likely to repeat an act that would be a sex offense if committed by an adult, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

On October 4, 2006, the State filed a petition of delinquency alleging B.W., while he was fifteen years old, committed four acts of child molesting, two of which would be Class B felonies and two of which would be a Class C felonies if committed by an adult.[2] B.W. admitted he was a delinquent child for committing Count I, an act that would be Class B felony child molesting if committed by an adult,[3] and the State dismissed the three remaining allegations. The juvenile court ordered B.W. to have a psychological evaluation by licensed psychologist Ed Connor. Dr. Connor evaluated B.W. in October 2006 and issued a report in which he opined B.W. had a "moderate to high" risk to reoffend. (App. at 120, 121.)

On November 16, 2006, the juvenile court awarded wardship of B.W. to the Department of Correction, suspended the commitment to probation, and placed him at Wernle Children's Home ("Wernle"), where he was to serve his probation until he successfully completed a Sexual Offender Residential Treatment Program.

As part of his treatment at Wernle, B.W. was given multiple polygraph examinations. During these examinations, B.W. admitted to prior sexual encounters, including both "hands on" and "hands off" contact,[4] with forty-seven[5] humans and seven animals. (Tr. at 110.)

In March 2008, the State filed a motion to revoke B.W.'s probation, alleging B.W. had committed delinquent acts and failed to follow the rules at Wernle by leaving the grounds of Wernle for approximately twenty hours without permission and by threatening and fighting with another Wernle resident. B.W. admitted to the allegations in the revocation petition. The juvenile court placed B.W. in the juvenile detention center pending the dispositional hearing and then, on April 9, 2008, ordered B.W. to return to Wernle to finish his treatment program.

On August 29, 2008, the juvenile court held a review hearing during which B.W.'s

---

1. We note that B.W.'s counsel has unnecessarily reproduced the entire transcript from this case in the Appellant's Appendix. We direct counsel's attention to Indiana Appellate Rule 50, which provides that the appellant's appendix shall contain, among other things, a "portion of the Transcript that contains the rationale of decision and any colloquy related thereto...." Appellate Rule 50 "is meant to avoid unnecessary bloating of the appellate record and to streamline our review. In other words, we do not need two full copies of the transcript." *Williams v. State*, 895 N.E.2d 377, 379 n. 2 (Ind.Ct.App.2008).

2. Ind.Code § 35–42–4–3.

3. B.W. admitted he performed or submitted to deviate sexual conduct with a five-year-old male. *See* Ind.Code § 35–42–4–3(a).

4. The "hands on" contact consisted of touching or direct physical contact, while the "hands off" contact consisted of acts of voyeurism.

5. There is a discrepancy in the record regarding the number of B.W.'s human victims. During the hearing, Wernle counselor, Stanley Thomas testified that B.W. had had contact with forty-eight humans, but the juvenile court found—based on Thomas's written assessment, that B.W.'s sexual contacts with humans totaled forty-seven.

probation officer, Rick Cochran, informed the court that B.W. had "successfully completed his treatment program at Wernle." (*Id.* at 71.) Cochran also told the court that the permanency plan for B.W. was to place him with his grandparents in Ohio.

On September 12, 2008, the State filed a Motion for Sex Offender Registration, requesting the juvenile court find B.W. was a sex offender required to register on the sex offender registry. On September 15, 2008, the juvenile court held a hearing on the State's motion. B.W., who was eighteen at the time of the hearing, testified that he understood what his triggers to reoffending were and stated he would avoid reoffending "because of [his] age now [he'd] go straight to prison" and "wouldn't get a second chance to try to live life to the fullest." (*Id.* at 149.)

The State presented an expert witness, Thomas, a counselor who supervised B.W.'s treatment and worked with B.W. on a daily basis while he received treatment during his two years at Wernle. Thomas discussed the sexual encounter disclosures B.W. had made in some of his polygraph examinations at Wernle, and B.W. did not object to the testimony.

Thomas explained that B.W. "started offending" when he was nine years old and had a peak of activity between ages thirteen to fifteen, (*id.* at 113), and testified B.W.'s victims ranged from two years old to "seniors." (*Id.* at 112.) Thomas testified that some of B.W.'s contacts with his victims had been predatory in nature and involved "clear premeditation planning in the process to avoid detection by other individuals" and that "for the most part [involved] some form of grooming process . . . where he ingratiated himself with the potential victim in order to get them [sic]

to go along with what he wanted them to do sexually with him." (*Id.* at 95.) Thomas explained that B.W.'s planning involved the purchase of surveillance equipment, which was "a strong indication that someone is pretty motivated in this compulsive behavior." (*Id.* at 107.)

Thomas testified that when B.W. entered Wernle his risk for reoffending was assessed at "a high risk . . . I would say he was very high risk. . . ." (*Id.* 85.) Richard Cochran, B.W.'s probation officer, testified that B.W. had been assessed by Dr. Connor prior to B.W.'s placement at Wernle and that Dr. Connor's assessment placed B.W. at a "moderate to high" risk to reoffending. (*Id.* at 118–119.) Cochran indicated that Dr. Connor's report was part of B.W.'s predispositional report, and the juvenile court took judicial notice of the case file.

Thomas further testified that B.W. had "come a long way" (*id.* at 96) with treatment and had been able to develop internal controls that would help him make good choices. Thomas indicated he was "pleased" with the support that B.W. had received from his family, who had been educated on B.W.'s risk factors and his safety prevention plan. (*Id.* at 93.) Thomas stated that B.W. had been attending the local public high school during Summer and Fall of 2008 and had displayed appropriate behavior while in the community. Thomas and Cochran testified they had no indication B.W. had engaged in any reoffending or inappropriate behavior while off-campus at school or while at Wernle.

Thomas testified that on completion of the Wernle program, B.W. was assessed by using testing instruments [6] and input from the treatment team. He testified

---

**6.** The testing instruments used to assess B.W. included the Static 99, the Juvenile Sex Offender Assessment Protocol–II (JSOAP–II),

and the Estimate of Risk of Adolescent Sexual Offense Recidivism (ERASOR).

"there was clear indication that there was change as [B.W.] went through treatment," (*id.* at 91), and B.W. had benefitted from treatment. (*See id.* at 103.) Thomas testified that, based on the results of the testing and B.W.'s permanency plan, B.W. was assessed to be at a "moderate" risk for reoffending. (*Id.* at 93.) Thomas explained that the range of risk levels included low, low moderate, moderate, moderate high, and high. Thomas testified B.W.'s sex drive and preoccupation with sex were "excessively high" (*id.* at 107) and were "abnormal" (*id.* at 109) for a typical seventeen-year-old male. Still, Thomas opined that B.W. did not belong on the sex offender registry. (*Id.* at 109–110.)

The juvenile court found B.W. was required to register as a sex offender. Its order provided, in relevant part:

1. That juvenile, [B.W.], date of birth August 28, 1990, was originally adjudicated for the delinquent act of child molesting in this cause of action which constitutes a possible qualifying offense for [the] sex offender registry; That the Court's disposition of this cause was to place [B.W.] at Wernle Children's Home, and that the child's date of admission was November 20, 2006. The Court finds through State's Exhibit "1" the report of Stanley Thomas of Wernle Children's Home that [B.W.'s] sexual history has included sexual contact with "both male and female individuals whose ages have ranged from two (2) years to senior age adults. [B.W.'s] sexual contacts have totaled forty-seven (47) humans and seven (7) animals. [B.W.'s] sexual offenses have included sexual acts as; frottage of breasts and buttocks outside clothing, fondling of bare breasts, buttocks, and bare penis, digital vaginal penetration, masturbation, mutual masturbation with victim/contact, fellatio, cunnilingus, oral contact to bare breasts, exposure, voyeurism, anal contact, vagi-

nal-penile sexual intercourse, and bestiality."

\*     \*     \*     \*     \*     \*

4. The Court further finds that Stanley Thomas of Wernle found [B.W.'s] risk for recidivism is in the moderate range at this time. The Court finds that prior to the placement the child was examined by Dr. Ed Connor. Dr. Connor's report which is contained in the Pre–Dispositional Report, found that [B.W.] should be considered a "moderate to high chance to recidivate."

5. The Court finds through testimony of [B.W.] that he indicates that he would not perform these illicit sexual acts in the future because of fear of possible consequences. The Court finds that [B.W.'s] testimony indicates the fear of punishment and not empathy for victims is the motivation to avoid future incidents.

6. The Court further finds improvements in [B.W.'s] circumstances and his condition; however, the Court also finds the he remains a substantial risk to commit future acts. The Court considers it significant that [B.W.] recently committed acts of violence and runaway at the Wernle placement. The Court finds that these acts show instability and a continued inability to control his behavior in the future. The Court finds that [B.W.] is at least fourteen (14) years of age, that he has been discharged from a juvenile detention facility as a result of an adjudication as a delinquent child from an act which would be a qualifying offense for sex offender registry, to-wit: did knowingly perform or submit to deviate sexual conduct with a male child under fourteen (14) years of age, to wit: R.H. . . . . age five (5) years, in violation of I.C. 35–42–4–3(a), Child Molesting, a Class B felony. The Court further finds

by clear and convincing evidence that [B.W.] is likely to repeat sex offences [sic] outlined in I.C. 11–8–8–5 § (a) [sic]. The Court hereby finds that [B.W.] must be and hereby is directed to appropriately register as a sex offender pursuant to Indiana Code [1]1–8–8–5.

(App. at 234–36). B.W. filed a motion to correct error, which the juvenile court denied.

## DISCUSSION AND DECISION

B.W. argues the trial court erred by ordering him to register as a sex offender under Ind.Code § 11–8–8–5 of the Sex Offender Registration Act. Before addressing his argument, we note the purpose behind the juvenile justice system is to "ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation." Ind.Code § 31–10–2–1(5). "As such, the statutory scheme for dealing with minors who commit crimes is vastly different from the statutory scheme directed to adults who commit crimes." *J.C.C. v. State*, 897 N.E.2d 931, 935 (Ind.2008) (citing *B.J.B. v. State*, 805 N.E.2d 870, 873 (Ind.Ct.App.2004)).

■ When judging the sufficiency of the evidence supporting a decision to place a juvenile on a sex offender registry, we neither reweigh the evidence nor judge the credibility of the witnesses. *Z.H. v. State*, 850 N.E.2d 933, 936 (Ind.Ct.App.2006), *trans. denied; M.L.H. v. State*, 799 N.E.2d 1, 3 (Ind.Ct.App.2003), *trans. denied.* Instead, we look to the evidence and the reasonable inferences that can be drawn therefrom that support the juvenile court's decision, and we will affirm if there is clear and convincing evidence from which the juvenile court could find the elements of the Sex Offender Registration Act have been met. See *R.G. v. State*, 793 N.E.2d 238, 240 (Ind.Ct.App.2003), *trans. denied.*

The Sex Offender Registration Act requires a sex offender to register with local law enforcement authorities in the area where the offender resides. *See M.L.H.*, 799 N.E.2d at 3; *see also* Ind.Code § 11–8–8–7 (referring to the registry requirements for a sex offender). A juvenile may be found to be a sex offender under the Sex Offender Registration Act if he is:

a child who has committed a delinquent act and who:

(A) is at least fourteen (14) years of age;

(B) is on probation, is on parole, is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31–9–2–115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be an offense described in subsection (a) if committed by an adult; and

(C) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

Ind.Code § 11–8–8–5(b)(2).[7] In deciding whether to place a juvenile on a sex offender registry, a juvenile court "shall consider expert testimony" concerning whether a juvenile is likely to reoffend. Ind. Code § 11–8–8–5(c).

---

**7.** Child molesting is included in the offenses described in subsection (a). *See* Ind.Code § 11–8–8–5(a)(3). These same requirements for determining whether a juvenile is a sex offender can be found at Ind.Code § 11–8–8–4.5(b)(2). Here, the juvenile court found B.W. was a sex offender under Ind.Code § 11–8–8–5(b)(2); therefore, we will address that section of the Sex Offender Registration Act.

■ Thus, before a juvenile may be ordered to register as a sex offender, the juvenile court must hold an evidentiary hearing and find by clear and convincing evidence that the juvenile is likely to commit another sex offense. *See J.C.C.*, 897 N.E.2d at 934; *see also* Ind.Code § 11–8–8–5(b)(2). "[T]he Legislature has dictated this heightened burden of proof ... in recognition of the serious social consequences of sex offender registration ...." *J.C.C.*, 897 N.E.2d at 934. When a juvenile is placed in a secure private facility,[8] a sex offender registry hearing can be conducted only after the juvenile has been released from the facility. *Id.* The legislative intent behind holding a hearing upon the juvenile's release "is to hold the sex offender registration determination in abeyance so that the juvenile has the opportunity to be rehabilitated during detention." *Id. See also In re G.B.*, 709 N.E.2d 352, 354 (Ind.Ct.App.1999) ("This statutory scheme helps insure that juveniles who have been rehabilitated by virtue of their detention are not required to register as a sex offender.").

Consistent with the rehabilitative purpose behind the juvenile justice system, our Court has explained that

> the focus of inquiry, with respect to a juvenile who has been released from a secure facility, is whether the treatment received in that facility has resulted in the juvenile's rehabilitation. If that is the case, there cannot be clear and convincing evidence that the juvenile is likely to re-offend and the juvenile cannot be placed on the sex offender registry.

*B.J.B.*, 805 N.E.2d at 874. Thus, a sex offender registry hearing needs to include "an evaluation of whether that period of treatment sufficiently rehabilitated [the ju-

venile] and whether he was likely to commit another sex offense." *Id.*

This rehabilitative focus was recently reiterated by our Supreme Court when discussing the required showing at a juvenile sex offender registry hearing:

> Given the overarching rehabilitative thrust of Indiana's juvenile justice system, and the statute's specific requirements that any finding of a juvenile's likelihood to repeat must await discharge from secure detention, and must be based on clear and convincing evidence, we hold (as did the Court of Appeals in *B.J.B.*, 805 N.E.2d at 874) that an evaluation of whether a juvenile has been rehabilitated while in detention is a prerequisite to finding clear and convincing evidence that the juvenile is likely to repeat.

*J.C.C.*, 897 N.E.2d at 935–36 (citations and footnote omitted). In *J.C.C.*, our Indiana Supreme Court reversed an order that a juvenile register as a sex offender because there was no evidence, expert or otherwise, analyzing whether the juvenile had been rehabilitated while in a treatment program. *Id.* at 936. Without such evidence, it could not conclude there was clear and convincing evidence the juvenile was likely to commit another sex offense. *Id.*

■ B.W. argues there was not sufficient evidence to support the order that he register as a sex offender because Thomas did not recommend placing B.W. on the sex offender registry; because the court erroneously relied on Dr. Connor's assessment conducted prior to B.W.'s placement at Wernle; and because there was evidence he successfully completed his treatment program at Wernle, and conversely, no evidence his treatment was not successful.[9] B.W. contends:

---

8. Neither party disputes that Wernle was a secure private facility.

9. In his Reply Brief, B.W. argues the juvenile court erred by admitting the statements he

The goal of [B.W.'s] placement at Wernle was treatment and rehabilitation as a sex offender. Simple logic leads to the conclusion that [B.W.] was sufficiently rehabilitated under our juvenile system. To conclude otherwise would undermine all efforts to effectively treat and rehabilitate juvenile sex offenders at secure private facilities within this state.

(Appellant's Br. at 5.) B.W. asserts that given "the standard of review and statutory scheme as interpreted by this Court . . . and given the testimony from Mr. Thomas and Mr. Cochran, it becomes clear that the trial court erroneously required [B.W.] to register as a sex offender." (*Id.*)

The State acknowledges "the evidence does show that [B.W.'s] chances of recidivism have been reduced through treatment," (Appellee's Br. at 8), but contends the juvenile court properly ordered B.W. to register as a sex offender because, despite this treatment, the evidence showed that B.W. remained at a moderate risk to reoffend, had merely a fear of punishment as his motivation for refraining from reoffending, and was "a sexual predator with a long and troubling sexual history, which involved premeditated acts and numerous sexual contacts." *Id.* The State asserts B.W.'s argument is merely an invitation to reweigh the facts and the credibility of the witnesses.

B.W.'s completion of the Wernle treatment program does not automatically equate to the requisite level of rehabilitation that would preclude the juvenile court from determining there was clear and convincing evidence he is likely to reoffend. At the most, the completion of a treatment

program is a factor in the prerequisite rehabilitation evaluation discussed by our Indiana Supreme Court. Indeed, there may be situations, as was the case here, where the juvenile court may determine a juvenile is not sufficiently rehabilitated despite completing a treatment program.

The juvenile court made no explicit finding B.W. had not been sufficiently rehabilitated during his treatment at Wernle; however, its order reveals it engaged in such an evaluation and found that to be the case. The order refers to B.W.'s history of numerous sexual contacts; the date of B.W.'s admission to Wernle and his moderate to high risk level of reoffending at that time; his actions while in treatment, including violations of his probation just a few months prior to his discharge from treatment; his risk for reoffending on completion of his treatment, which had remained at a moderate level; and the fact that his motivation to avoid reoffending was merely a fear of punishment. It recognized B.W. improved during treatment but determined B.W. nevertheless remained at a substantial risk to commit future acts. (*See* App. at 235–36.) Thus, the juvenile court determined B.W.'s almost two years of treatment did result in some progress but did not sufficiently rehabilitate him.

Nor was the order erroneous because it referenced Dr. Conner's assessment that was made prior to B.W.'s placement at Wernle. We agree that a juvenile court cannot rely solely on such pre-treatment assessments when ordering a juvenile to register as a sex offender. *See J.C.C.*, 897

---

made during his polygraph examinations. B.W. has waived any such argument because: (1) he did not object at the hearing, *see J.V. v. State*, 766 N.E.2d 412, 414 (Ind.Ct.App.2002) (holding the failure to object at trial results in a waiver of issue on appeal), *trans. denied;* and (2) he did not raise such an argument in

his Appellant's Brief, *see C.T.S. v. State*, 781 N.E.2d 1193, 1202 n. 9 (Ind.Ct.App.2003) (holding any argument not presented in original brief is waived, and a party may not revive it by arguing issue in reply brief), *trans. denied.*

N.E.2d at 936 (holding juvenile court erred by relying on expert opinion that was based solely on pre-dispositional acts); *B.J.B.*, 805 N.E.2d at 874 (explaining that reports from psychological exams conducted prior to juvenile's treatment were not, in and of themselves, sufficient to show juvenile was likely to commit another sex offense). Here, by contrast, the juvenile court referred to B.W.'s pre-treatment assessment, which indicated a moderate to high risk level of reoffending, as a guidepost for comparison to B.W.'s post-treatment assessment, which indicated a moderate risk of reoffending. Accordingly, we cannot conclude the juvenile court's reference was erroneous.

Finally, we cannot find the order erroneous because Thomas, the only expert to testify, testified B.W. had made progress during treatment and did not recommend placing B.W. on the sex offender registry. Thomas's recommendation that B.W. not be placed on the registry is a conclusion of law to which an expert may not testify. This determination whether to order a juvenile to register as a sex offender can be made only by the juvenile court after finding there is clear and convincing evidence the juvenile is likely to reoffend. *See* Ind. Code § 11–8–8–5(b)(2)(C).

Here, the juvenile court held a hearing following B.W.'s discharge from the Wernle treatment program. It heard evidence that shone a positive light on B.W., including his progress in treatment, his recent ability to attend high school off-campus, the lack of reports of inappropriate sexual incidents while in treatment and off-campus, and the support from his family during treatment. At the same time, it was faced with evidence that cast a shadow over B.W., including his history of numerous sexual contacts with a wide age range of humans and animals, his degree of planning and premeditation in some of these contacts to avoid detection, his admission that his motivation to avoid reoffending was based on the fear of punishment, his acts of running away and violence a few months prior to his release from treatment, and his moderate risk level of reoffending despite almost two years of treatment.

While Thomas testified he did not think B.W. should be required to register at this time, he also testified B.W. was at a moderate risk of reoffending. The juvenile court was required by statute to consider expert testimony regarding whether B.W. was likely to reoffend, *see* Ind.Code § 11–8–5–5(c), and it apparently placed substantial weight on Thomas's testimony about B.W.'s continued likelihood of reoffending even after completing his treatment. The juvenile court weighed the evidence and determined there was clear and convincing evidence B.W. was likely to reoffend.

Because we may not reweigh the evidence or judge the credibility of the witnesses, we cannot say the juvenile court erred by ordering B.W. to register as a sex offender. *See J.C.C.*, 897 N.E.2d at 936 (expert testimony may establish clear and convincing evidence of likelihood to repeat); *M.L.H.*, 799 N.E.2d at 3 (holding there was clear and convincing evidence the juvenile was likely to reoffend where all the expert witnesses testified he had a high risk of reoffending); *R.G.*, 793 N.E.2d at 240 (declining to reweigh evidence where treatment clinician and doctor both indicated juvenile was at high risk to reoffend but two therapists who worked with juvenile after his release from the treatment indicated they observed nothing in juvenile's behavior to suggest he was at high risk and finding sufficient evidence to support registration order where juvenile disclosed twenty-one previous sexual partners during treatment and was inappropriate with residents during treatment);

*K.J.P. v. State,* 724 N.E.2d 612, 616 (Ind. Ct.App.2000) (affirming order requiring juvenile to register as a sex offender where two psychologists and a counselor indicated juvenile was at a risk for reoffending but counselor testified she preferred the juvenile not be placed on the registry), *trans. denied.* Cf. *J.C.C.,* 897 N.E.2d at 936 *(finding insufficient evidence to support registration order* where expert witness based opinion solely on pre-dispositional acts of juvenile and did not consider post-treatment); *Z.H.,* 850 N.E.2d at 940 (reversing order requiring juvenile to register as a sex offender where evidence showed juvenile had completed treatment goals but where there was no expert testimony regarding juvenile's risk of reoffending following completion of treatment); *B.J.B.,* 805 N.E.2d at 876 (finding juvenile court erred by failing to hold sex offender registry hearing following juvenile's completion of treatment program and by relying on psychological exams conducted prior to treatment and noting there was no evidence of inappropriate sexual behavior aside from the sole molestation incident for which juvenile was adjudicated a delinquent child).

### CONCLUSION

The juvenile court did not err in concluding there is clear and convincing evidence B.W. is likely to repeat an act that would be a sex offense if committed by an adult.

Affirmed.

BAKER, C.J., and BARNES, J., concur.