Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**BRENT WESTERFIELD**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana



FILED

Nov 26 2012, 9:45 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| N.L., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 47A01-1205-JV-245 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE LAWRENCE CIRCUIT COURT
The Honorable Andrea K. McKord, Judge
Cause No. 47C01-1011-JD-505

**November 26, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

The Lawrence Circuit Court ordered N.L., a juvenile, to register as a sex offender. N.L. appeals and claims that there was insufficient evidence to support the juvenile court's decision.

We affirm.

**Facts and Procedural History**

In September 2010, when N.L. was sixteen years old, he convinced a nine-year-old boy, S.K., into playing a game of "truth or dare." S.K. was a former neighbor of N.L., and N.L. used the game to engage in sexual activity with the boy, including touching each other's penises. Eventually, N.L. told S.K. to perform oral sex upon him, and exposed his erect penis to the boy. S.K.'s father walked into the room before S.K. actually performed oral sex on N.L. and stopped the activity.

N.L. was eventually interviewed by the police regarding this incident. N.L. admitted to some of his behavior, but he also lied to the police and told them that S.K. was the same age as he was. He also told a probation officer that his penis had not been erect. It was later discovered that N.L. had engaged in similar conduct with S.K. two years before the current incident.

On November 19, 2010, the State filed an allegation that N.L. was a delinquent child for committing what would be Class C felony child molesting if committed by an adult. After an initial denial, N.L. agreed on April 4, 2011, to admit to committing what would be Class D felony sexual battery if committed by an adult. This included admitting that S.K. was so mentally disabled or deficient that he could not consent to N.L.'s touching.

2

The pre-dispositional report indicated that during a one-month period in 2009, N.L. had rented $2,000 worth of pornographic content on cable television. At the time of the dispositional hearing, N.L. was viewing internet pornography multiple times on a daily basis. N.L. had not attended school since dropping out in the sixth grade, and his grandmother, who was his adoptive mother, provided only minimal supervision of the teenager. An assessment conducted shortly before the dispositional hearing indicated that N.L. was at a high risk of reoffending, and N.L. tried to minimize the seriousness of his behavior. In its dispositional order, the juvenile court placed N.L. in the Resolute Treatment Facility ("Resolute").

The staff at Resolute evaluated N.L. and found that he was amenable to treatment. During his eight-month stay at Resolute, N.L. participated in a variety of therapies, and successfully completed his treatment program. However, N.L.'s family appeared to not understand the gravity of N.L.'s behavior and tended to minimalize its seriousness. N.L.'s grandmother also failed to adequately supervise him, due to her advanced age and health problems. N.L. also admitted that, during home visitations, he had viewed internet pornography on two occasions. The probation department was worried that N.L. would not be adequately supervised if released to his grandmother. And release to his father was ruled out because his father's wife, N.L.'s stepmother, was relatively young. Therefore, N.L. was released to the Jackson County Juvenile Home in January 2012. N.L. continued his improvement at the Juvenile Home, and became involved in high-school activities. He also participated in family therapy and individual counseling.

On February 9, 2012, the juvenile court conducted a review hearing and heard evidence regarding whether N.L. should register as a sex offender. The clinical director of Resolute testified that N.L.'s risk of reoffending, which had initially been high, had been significantly reduced by his treatment at Resolute. The clinical director also testified regarding a risk assessment that had been performed on N.L. on February 1, 2012. This evaluation indicated that N.L.'s "overall risk" of reoffending "appears to be moderate." Appellant's App. p. 84. The juvenile court took the matter under advisement. Then, on May 24, 2012, the probation department filed a report indicating that N.L. had become uncooperative at the Juvenile Home, likely due to him having been taken off of an antidepressant medication. The probation department recommended that N.L. be released from the Juvenile Home to live with his grandmother under a four-month term of probation. The probation department further recommended that N.L. be required to register as a sex offender. The juvenile court adopted these recommendations in its May 24, 2012 order. It is from this order requiring N.L. to register as a sex offender that N.L. now appeals.

**Discussion and Decision**

The sole issue presented on appeal is whether the trial court erred in ordering N.L. to register as a sex offender. Indiana's Sex Offender Registration Act requires sex offenders to register with local law enforcement authorities in the area where the offender resides. Ind. Code § 11-8-8-7; B.W. v. State, 909 N.E.2d 471, 476 (Ind. Ct. App. 2009).

A juvenile may be found to be a sex offender under the Sex Offender Registration Act if he is:

4

a child who has committed a delinquent act and who:

(A) is at least fourteen (14) years of age;

(B) is on probation, is on parole, is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31–9–2–115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be an offense described in subsection (a)[1] if committed by an adult; and

(C) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

Ind. Code § 11-8-8-5(b)(2).

The decision whether to place a juvenile on the sex offender registry is not to be taken lightly. During the decision-making process, the juvenile court is statutorily required to consider expert testimony regarding whether a juvenile is likely to reoffend. Ind. Code § 11-8-8-5(c); B.W., 909 N.E.2d at 476. Before a juvenile may be ordered to register as a sex offender, the juvenile court must hold an evidentiary hearing and find by clear and convincing evidence that the juvenile is likely to commit another sex offense. Ind. Code § 11-8-8-5(b)(2); B.W., 909 N.E.2d at 476 (citing J.C.C. v. State, 897 N.E.2d 931, 933 (Ind. 2008)). Our General Assembly has required this burden of proof "in recognition of the serious social consequences of sex offender registration[.]" J.C.C., 897 N.E.2d at 934.

If a juvenile has been placed in a secure private facility, a sex offender registry hearing can be conducted only after the juvenile has been released from the facility. B.W., 909 N.E.2d at 476 (citing J.C.C., 897 N.E.2d at 934). "The legislative intent

---

[1] This includes sexual battery, which is what N.L.'s actions would have constituted had he been an adult. See I.C. § 11-8-8-5(a)(10).

5

behind holding a hearing upon the juvenile's release 'is to hold the sex offender registration determination in abeyance so that the juvenile has the opportunity to be rehabilitated during detention.'" Id. Accordingly:

> the focus of the inquiry, with respect to a juvenile who has been released from a secure facility, is whether the treatment received in that facility has resulted in the juvenile's rehabilitation. If that is the case, there cannot be clear and convincing evidence that the juvenile is likely to re-offend and the juvenile cannot be placed on the sex offender registry.

J.C.C., 897 N.E.2d at 935 (quoting B.J.B. v. State, 805 N.E.2d 870, 873 (Ind. Ct. App. 2004)); accord B.W., 909 N.E.2d at 476. The decision to order a juvenile to register as a sex offender cannot be based solely on evidence of the juvenile's behavior that occurred prior to his placement in a treatment facility. See J.C.C., 897 N.E.2d at 934 (reversing finding that juvenile was likely to reoffend when the only evidence presented by the State was an evaluation of the juvenile's behavior prior to his commitment); see also B.J.B, 805 N.E.2d at 873 (reversing finding that juvenile was likely to reoffend because "there needed to be an evaluation of whether that period of treatment sufficiently rehabilitated [the juvenile] and whether he was likely to commit another sex offense."). The juvenile court therefore needs to evaluate whether the juvenile's treatment sufficiently rehabilitated him and whether he is likely to commit another sex offense. Id.

On review of a juvenile court's determination that a delinquent register as a sex offender, we neither reweigh the evidence nor judge the credibility of the witnesses. B.W., 909 N.E.2d at 476. We instead consider only the evidence that supports the juvenile court's decision along with the reasonable inference to be drawn from this evidence. Id. We will affirm the juvenile court's decision unless no reasonable trier of

6

fact could have found that the elements of I.C. § 11-8-8-5(a)(2) were proven by clear and convincing evidence.  R.G. v. State, 793 N.E.2d 238, 240 (Ind. Ct. App. 2003) (referring to predecessor statute).

On appeal, N.L. claims that the State failed to prove by clear and convincing evidence that he was likely to repeat as a sex offender.  N.L. notes that his treatment had a significant impact on his likelihood to reoffend, going from high to moderate.  He also refers to the improvements he made in his social stability, such as becoming involved in high school activities.  He further notes that he is continuing in his treatment.

The problem with N.L.'s argument, however, is that he refers almost exclusively to evidence contrary to our standard of review. Certainly, evidence was presented that would have supported a decision not to require N.L. to register as a sex offender.  Indeed, another, reasonable trier of fact might have come to a different conclusion from the one reached by the juvenile court here.  But we are not acting as the trier of fact, and we are unable to say that, based upon the evidence before the juvenile court, no reasonable trier of fact could have found that there was clear and convincing evidence that N.L. was likely to reoffend.

Importantly, there was substantial evidence that, despite his treatment, N.L. was still a moderate risk to reoffend.  Moreover, while in his treatment, he admitted to viewing pornography during his home visits.  N.L.'s excessive use of pornography was one of the reasons for placing him in the treatment facility.  Moreover, N.L. had become increasingly difficult at the Juvenile Home, likely as a result of a change in his medication.  In addition, N.L.'s grandmother was in poor health, and had proven unable

to properly supervise N.L. Thus, despite the progress that N.L. had made in the structured environment of the treatment facility and juvenile home, his release on probation as a juvenile with a moderate risk of reoffending would put him back in the unsupervised, unstructured home environment which facilitated his prior offenses. These facts are unlike the situations in J.C.C. and B.J.B., where the only evidence presented related to the juveniles' behavior and risk prior to their incarceration and treatment. See J.C.C., 897 N.E.2d at 934 B.J.B, 805 N.E.2d at 873; cf. A.O. v. State, 837 N.E.2d 219, 222 (Ind. Ct. App. 2005) (reversing order requiring juvenile to register as a sex offender where no expert witnesses testified regarding the juvenile's propensity to reoffend and no evidentiary hearing was conducted after his release from a correctional facility). From the evidence before it, the juvenile court could reasonably conclude that there was clear and convincing evidence that N.L. was likely to reoffend.

We also agree with N.L. that the evidence in this case was not as compelling as that presented in B.W., where we affirmed the trial court's order requiring a juvenile to resister as a sex offender. In B.W., as here, there was evidence that the juvenile had made progress in his treatment and had completed a treatment program. 909 N.E.2d at 479. But in B.W, there was also evidence presented regarding the juvenile's disturbing history of inappropriate sexual behavior, which included sexual contacts with humans and animals, his planning and premeditation in these incidents to avoid detection, his admission that his motivation to not repeat his offenses was fear of punishment, acts of running away and violence a few months prior to his release from treatment, and his moderate risk level of reoffending despite almost two years of treatment. Id.

The important similarity between the two cases is the fact that both B.W. and N.L., despite their treatment, still presented a moderate risk of reoffending. And, as we noted in B.W., the completion of a treatment program does not "automatically equate to the requisite level of rehabilitation that would preclude the juvenile court from determining there was clear and convincing evidence he is likely to reoffend." Id. Instead, "the completion of a treatment program is a factor in the prerequisite rehabilitation evaluation[.]" Id. Thus, a juvenile court may determine a juvenile is not sufficiently rehabilitated despite completing a treatment program. Id.

Despite the fact that the evidence presented here was not as strong as that presented in B.W., we are unable to say that the evidence presented here, and the reasonable inferences to be drawn therefrom, was so insufficient that no reasonable trier of fact could have found by clear and convincing evidence that N.L. was likely to reoffend.

Our decision should not be read to minimize the progress N.L. has made in addressing his sexual problems. To the contrary, it appears undisputed that N.L. had made a strong effort to improve himself and address his problems, and we commend him for his efforts. However, under our standard of review, we are unable to say that the decision reached by the juvenile court was unreasonable.

In conclusion, there was sufficient evidence to support the juvenile court's decision to require N.L. to register as a sex offender as a condition of his probation.

Affirmed.

VAIDIK, J., and BARNES, J., concur.

9