ATTORNEY FOR APPELLANT
Katherine A. Cornelius
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Zachary J. Stock
Deputy Attorney General
Indianapolis, Indiana



FILED
Dec 16 2008, 2:21 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-0803-JV-143

J.C.C.,

*Appellant (Respondent below)*,

v.

STATE OF INDIANA,

*Appellee (Petitioner below)*.

Appeal from the Marion County Superior Court, Nos. 49D09-0101-JD-379,
49D09-0101-JD-380, 49D09-0101-JD-389
The Honorable Christopher Piazza, Magistrate

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0403-JV-266

**December 16, 2008**

**Sullivan, Justice.**

During a year's incarceration at Boys' School for an episode of child molesting offenses, J.C.C. successfully completed a sex offender treatment program. We hold that the court was required to evaluate whether J.C.C. was rehabilitated while in the treatment program before it

could find by "clear and convincing evidence" that J.C.C. was "likely to repeat" a sex offense and order him to register as a sex offender.

## Background

J.C.C. was adjudicated delinquent for nine acts of child molesting, which would be Class B felonies if committed by an adult. J.C.C. was 14-years-old at the time of the offenses. The nine counts of child molesting related to one incident involving three juvenile victims, and generally involved J.C.C. compelling the victims to engage in oral and anal sex with him and with each other.

Following the disposition hearing, the juvenile court ordered J.C.C. committed to the Indiana Department of Correction ("DOC") for two years for placement at the Indiana Boys' School. J.C.C. did not appeal. While committed, J.C.C. successfully completed a treatment program for sexual offenders in one year and was released.

Following J.C.C.'s release from DOC custody, the State petitioned to have J.C.C. register as a sex offender. At the conclusion of the evidentiary hearing, the juvenile court ordered J.C.C. to register as a sex offender. J.C.C. appealed. The Court of Appeals stayed J.C.C.'s registration as a sex offender pending the appeal. The Court of Appeals also allowed J.C.C. to pursue relief under Ind. Trial Rule 60(B). The juvenile court denied the T.R. 60(B) motion.

On appeal, J.C.C. raised two claims: first, that the State did not present clear and convincing evidence showing that he is likely to re-offend, and second, that the juvenile court abused its discretion when it denied his T.R. 60(B) motion. In an unpublished decision, a unanimous panel of the Court of Appeals affirmed the juvenile court's decision. J.C.C. v. State, No. 49A02-0403-JV-266, slip. op., 878 N.E.2d 544 (Ind. Ct. App. December 28, 2007). J.C.C. then sought, and we granted, transfer. In re J.C.C., 891 N.E.2d 42 (Ind. 2008) (table). We now address J.C.C.'s first claim.[1]

---

[1] In his brief to the Court of Appeals, J.C.C. also contended that the trial court erred by failing to grant his motion for relief under T.R. 60(B). J.C.C., slip op. at 7. Specifically, J.C.C. alleged that his attorney was ineffective and

## Discussion

## I

At the time relevant to this case, Indiana's Sex Offender Registration Act required an "offender" to register with local law enforcement authorities in the area where the offender resided. Ind. Code § 5-2-12-5 (Supp. 2002).[2] Indiana Code § 5-2-12-4(b) (Supp. 2002) [3] provided that a child is an "offender" if the child: (1) is at least 14-years-old; (2) is on probation, parole, or is discharged from a facility by the DOC, is discharged from a "secure private facility,"[4] or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be a sex offense if committed by an adult; and (3) is found by a court by clear and convincing evidence to be likely to repeat an act that would be a sex offense if committed by an adult.

J.C.C. maintains that the State failed to establish, by clear and convincing evidence, that he was likely to be a repeat sex offender, as required by I.C. § 5-2-12-4(b)(3).

At the evidentiary hearing, the juvenile court relied exclusively on the testimony of the State's expert witness, Michael Johnson. At the time of the hearing, Johnson was a Ph.D. candidate in clinical psychology with eleven years of experience working with juvenile sex offenders.

Johnson did not interview J.C.C. prior to testifying. (On cross-examination, Johnson said that "if I had data from the last six months, if I had assessed [J.C.C.] myself and got information about the last six months, that would [have] give[n] me more information that I could've used."

---

that the problems with the trial were sufficient to raise a question as to whether the trial was fundamentally fair. Id. at 7-8. We summarily affirm the decision of the Court of Appeals as to this issue. Ind. Appellate Rule 58(A)(2).

[2] I.C. § 5-2-12-5 was repealed by Pub. L. Nos. 140-2006 and 173-2006 (codified at I.C. § 11-8-8-7 (Supp. 2006)).

[3] I.C. § 5-2-12-4 was repealed by Pub. L. Nos. 140-2006 and 173-2006 (codified at I.C. § 11-8-8-5(b) (Supp. 2006)).

[4] A secure private facility means a facility licensed under Indiana law to operate as a secure private facility, or a private facility licensed in another state to provide residential care and treatment to one or more children in a secure facility other than a detention center, prison, jail, or similar correctional facility. I.C. § 31-9-2-115.

3

(Tr. 458.)) Nor did Johnson consider any information about J.C.C.'s detention, his successful completion of the DOC treatment program for sexual offenders, or his behavior in the community following release. Instead, Johnson relied exclusively on his application of risk assessment criteria called the "Estimate of Risk of Adolescent Sexual Offense Recidivism" (commonly referred to as "ERASOR") and his clinical experience to conclude that J.C.C. presented a moderately high risk to repeat a sex offense.

The ERASOR instrument utilizes "static and dynamic factors" to assess the level of risk of re-offending for a juvenile sex offender. (Tr. 444.) The dynamic factors are those considerations that change over time; static factors are those that do not. Johnson testified that he placed J.C.C. in the "moderate range of the high risk category" for re-offending because the static factors – J.C.C.'s charged offenses – were "on the extreme end of, [] sexual offenses, that lead to re-offending."[5] (Tr. 448-49.) Johnson assumed all dynamic factors in J.C.C.'s favor. That is, Johnson assumed that no dynamic factors existed that would increase J.C.C.'s risk of re-offending. Johnson also testified that, in his opinion, J.C.C.'s successful completion of the DOC treatment program for sexual offenders did not reduce his likelihood to re-offend.

In sum, Johnson concluded that J.C.C.'s offenses were so serious in and of themselves that nothing else – not the fact of his incarceration, nor his successful completion of the treatment program, nor his behavior in the community following release – could lower his risk of committing another sex offense. The trial court entered judgment on this basis.

## II

We find the evidence insufficient to conclude that J.C.C. is likely to repeat an act that would be a sex offense if committed by an adult. Our analysis is grounded in the specific provisions of the juvenile sex offender registry statute and the general purpose of the juvenile code.

---

[5] The static factors Johnson identified which would increase J.C.C.'s risk for re-offending included J.C.C.'s diverse sexual pattern during the offenses, the multiple offenses, and the multiple victims.

The sex offender registry statute requires the court to hold an evidentiary hearing to determine whether the juvenile is likely to be a repeat sex offender. I.C. § 5-2-12-4(b); In re G.B., 709 N.E.2d 352, 354 (Ind. Ct. App. 1999). When a juvenile is placed in a DOC facility, a secure private facility, or a juvenile detention facility, the sex offender registry hearing cannot be held until after the juvenile is released from the facility. I.C. § 5-2-12-4(b)(2). We believe that the legislative intent here is to hold the sex offender registration determination in abeyance so that the juvenile has the opportunity to be rehabilitated during detention.

In this case, the State never addressed the possibility that J.C.C.'s successful completion of the DOC treatment program for sex offenders reduced his likelihood to re-offend. The only evidence the State presented in support of its request for the "likely-to-repeat" finding was Johnson's evaluation of J.C.C.'s behavior prior to his commitment to the DOC. By way of contrast, in R.G. v. State, 793 N.E.2d 238, 239 (Ind. Ct. App. 2003), trans. denied, the State presented the discharge report of the residential treatment facility to which the juvenile had been committed.

In addition to the statute's mandate that the hearing on likelihood to repeat await the juvenile's discharge from secure detention, the Legislature has dictated that the State must prove the juvenile's likelihood to repeat by "clear and convincing" evidence. The "clear and convincing" standard is an intermediate standard of proof that:

> lies between a preponderance of the evidence and beyond a reasonable doubt which is required to find guilty in criminal prosecutions. The burden of proof by clear and convincing evidence is not a burden of convincing you that the facts which are asserted are certainly true or that they are almost certainly true or are true beyond a reasonable doubt. It is, however, greater than a burden of convincing you that the facts are more probably true than not true.

Lazarus Dept. Store v. Sutherlin, 544 N.E.2d 513, 524 (Ind. Ct. App. 1989), trans. denied. Our court has observed that the clear and convincing standard is employed in cases "where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims which have serious social consequences or harsh or far reaching effects on individuals to prove willful, wrongful and unlawful acts to justify an

5

exceptional judicial remedy….” Estate of Reasor v. Putnam County, 635 N.E.2d 153, 159-60 (Ind. 1994) (quoting Travelers Indem. Co. v. Armstrong, 442 N.E.2d 349, 360-61 (Ind. 1982)). We believe the Legislature has dictated this heightened burden of proof here in recognition of the serious social consequences of sex offender registration, including loss of employment opportunities, housing discrimination, threats, and violence. See B.J.B. v. State, 805 N.E.2d 870, 873 (Ind. Ct. App. 2004).

In this regard, the Court of Appeals has held that:

> the focus of the inquiry, with respect to a juvenile who has been released from a secure facility, is whether the treatment received in that facility has resulted in the juvenile’s rehabilitation. If that is the case, there cannot be clear and convincing evidence that the juvenile is likely to re-offend and the juvenile cannot be placed on the sex offender registry.

Id. at 874. In B.J.B., the Court of Appeals reversed the juvenile court’s finding that the juvenile was likely to repeat. The juvenile court had relied primarily on psychological examinations of the juvenile conducted prior to his dispositions for child molesting and other charges and prior to his rehabilitative treatment. Id. The juvenile was committed to a long-term, secure facility to address his psychological problems. Id. Judge Barnes concluded that after discharge “there needed to be an evaluation of whether that period of treatment sufficiently rehabilitated [the juvenile] and whether he was likely to commit another sex offense.” Id. Absent “a full evidentiary hearing on this issue,” he wrote, “it [is] impossible for us to conclude that there is clear and convincing evidence [that the juvenile was] likely to re-offend.” Id.

In addition to the specific provisions of the statute we have been exploring, we also find it highly relevant (as did the Court of Appeals in B.J.B.) that the Legislature has articulated that the guiding policy of this State and the purpose behind Indiana’s juvenile justice system is to “ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation.” I.C. § 31-10-2-1(5). This policy is grounded in the Progressive Movement of the 19th and 20th centuries when American society rejected treating juvenile law violators and adult criminals the same, favoring individualized diagnosis and treatment for juveniles. N.D.F. v. State, 775 N.E.2d 1085, 1088-89 (Ind. 2002) (citing State ex

6

rel. Camden v. Gibson Cir. Ct., 640 N.E.2d 696, 697 (Ind. 1994)). As such, the statutory scheme for dealing with minors who commit crimes is vastly different from the statutory scheme directed to adults who commit crimes. B.J.B., 805 N.E.2d at 873. This policy is consistent with the State's primary interest in rehabilitation, rather than the punishment of juvenile delinquents. G.B., 709 N.E.2d at 354 (quoting B.L. v. State, 688 N.E.2d 1311, 1314 (Ind. Ct. App. 1997)).

Given the overarching rehabilitative thrust of Indiana's juvenile justice system, id., and the statute's specific requirements that any finding of a juvenile's likelihood to repeat must await discharge from secure detention, G.B., 709 N.E.2d at 353, and must be based on clear and convincing evidence, I.C. § 5-2-12-4(b)(3), we hold (as did the Court of Appeals in B.J.B., 805 N.E.2d at 874[6]) that an evaluation of whether a juvenile has been rehabilitated while in detention is a prerequisite to finding clear and convincing evidence that the juvenile is likely to repeat.

In this case, the trial court relied on the expert testimony of Johnson. We do not suggest that expert testimony cannot establish clear and convincing evidence of likelihood to repeat. Indeed, a 2007 amendment to the statute appears to require expert testimony in this regard.[7] But here the expert based his opinion solely on the pre-dispositional acts of J.C.C. He did not interview J.C.C. after his completion of the treatment program. Cf. K. J. P. v. State, 724 N.E.2d 612, 616 (Ind. Ct. App. 2000), trans. denied (all of the expert witnesses interviewed K.J.P.). Though such an interview is not required, the expert's testimony or other evidence must analyze whether the juvenile has been rehabilitated subsequent to disposition. That did not occur in this case. Without such evidence, we cannot conclude that there was clear and convincing evidence that J.C.C. is likely to commit another sex offense.

---

[6] The State did not seek transfer from the decision of the Court of Appeals against it in B.J.B.

[7] "In making a determination under [I.C. § 11-8-8-5](b)(2)(C), the court shall consider expert testimony concerning whether a child is likely to repeat an act that would be an offense described in subsection (a) if committed by an adult." I.C. § 11-8-8-5(c) (Supp. 2007). (I.C. § 11-8-8-5(b)(2)(C) is the proviso concerning the court finding likelihood to repeat by clear and convincing evidence.)

## Conclusion

We reverse the order requiring J.C.C. to register as a sex offender. The opinion of the Court of Appeals is vacated except for that portion addressing J.C.C.'s T.R. 60(B) claim, which is summarily affirmed. App. R. 58(A)(2).

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.