ATTORNEYS FOR RELATOR
G. Michael Witte, Executive Director
Angie L. Ordway, Staff Attorney
Indiana Supreme Court Disciplinary Commission
Indianapolis, Indiana

ATTORNEYS FOR RESPONDENT
Mary Nold Larimore
Erin A. Webley
Indianapolis, Indiana



## In the
## Indiana Supreme Court

No. 94S00-1103-MS-165

STATE OF INDIANA EX REL.
INDIANA SUPREME COURT DISCIPLINARY COMMISSION,

*Relator*,

v.

DEREK A. FARMER,

*Respondent*.

On Petition To Enjoin Unauthorized Practice Of Law

**November 30, 2012**

**Per Curiam.**

The Indiana Supreme Court Disciplinary Commission ("Commission") brings this original action in the name of the State of Indiana pursuant to Indiana Admission and Discipline Rule 24. The Commission alleges that Respondent Derek A. Farmer ("Farmer") engaged in the unauthorized practice of law in Indiana, and it seeks an order from this Court enjoining him from practicing law here. This Court has original jurisdiction over matters involving the unauthorized practice of law. *See* IND. CONST. art. 7, § 4.

## Procedural Background

On March 22, 2011, the Commission filed a verified petition alleging that Farmer engaged in the unauthorized practice of law. The petition asks that Farmer "be permanently enjoined from engaging in the practice of law and soliciting clients in the State of Indiana[.]" (Verified Petition ("Pet.") at 6.) Farmer filed a verified return to the petition and later amended his return. Farmer denied many of the allegations in the verified petition and opposed issuance of the injunction. The Court appointed Leslie C. Shively to serve as Commissioner to hear the evidence and report his findings of fact to the Court. After conducting an evidentiary hearing, the Commissioner filed his report with findings of fact. Later, this Court received legal briefs from the parties and heard oral argument.

## Facts

John Ivy ("Ivy") was convicted and sentenced to sixty-five years for murder in Delaware County, Indiana. *See* Ivy v. State, 715 N.E.2d 408 (Ind. 1999). Thereafter, and at all relevant times, Ivy has been imprisoned in Indiana. In April 2000, Ivy, *pro se*, filed a petition for post-conviction relief. On May 30, 2000, a Deputy State Public Defender entered her appearance along with a "verified notice of present inability to investigate and motion for continuance." (Appendix ("App.") at 91-93.) The trial court granted the requested continuance. The chronological case summary shows no further activities in the post-conviction case until the Deputy State Public Defender was granted leave to withdraw her appearance on April 7, 2005. (App. at 93.)

Meanwhile, Ivy and his grandparents, Eddie and Laverne Ivy, Ohio residents, hired an Ohio attorney, Farmer, to provide legal work on Ivy's case as described below. Farmer was admitted to practice law in Ohio in 1999 and, at all relevant times, has maintained an office in Ohio. Farmer had represented Eddie formerly on an unrelated matter. Farmer has never been licensed to practice law in Indiana, although he was admitted to practice in Indiana temporarily in connection with another client's criminal case in Marion County in 2002-03.

Ivy signed a legal services engagement letter dated June 10, 2002, in which Farmer agreed, in exchange for a non-refundable payment of $1,000, to conduct a preliminary

2

investigation of Ivy's case, including an interview with Ivy, review of court documents, and legal research. The letter explained that after the preliminary review, Ivy would be "given his . . . legal options." (App. at 99.) It stated that if Farmer felt there were "viable legal avenues and the client wishes to continue," Ivy would be provided a letter explaining the scope of Farmer's "full representation" and quoting a fee for such representation. (App. at 99.) In June 2002, Farmer met with Ivy in prison and reviewed certain court records made available by Laverne.

On July 1, 2002, Farmer sent Ivy a letter, with a copy to Ivy's grandparents. That letter stated Farmer's fee for full representation was $25,000, plus expenses. The letter explained what Farmer intended to do to assist Ivy as part of full representation, including speaking to witnesses and reviewing reports. The letter indicated that the primary hopes for obtaining relief would be obtaining new evidence and showing that the prosecutor knew some of the witnesses at trial were lying. In the letter, Farmer added, "I believe that we may be able to amend the post-conviction motion that you have pending." (App. at 102.)[1]

Thereafter, the Ivys all agreed that Farmer would be paid $25,000, plus expenses, in exchange for him working on Ivy's case. At some time prior to October 31, 2003, the Ivys made an initial payment of $5,000. On October 31, 2003, or shortly thereafter, Farmer, Ivy, and Ivy's grandparents all signed an Engagement Agreement. It stated that the grandparents were agreeing to pay Farmer a flat fee of $25,000 – of which $5,000 had already been paid – to represent Ivy "with respect to post-conviction work[, m]ainly to ascertain evidence and information that may lead to [Ivy's] current conviction being vacated." (App. at 119.) The agreement stated that the grandparents would be billed periodically for the remainder of the flat fee. The grandparents made several payments toward the flat fee, ultimately paying Farmer a total of approximately $20,000.

After the Engagement Agreement, Farmer took the following actions. He met with Ivy again in prison in December 2003. On December 31, 2003, he drove to Muncie, Indiana, and

---

[1] Because Ivy had a post-conviction petition pending in Delaware County, Indiana, when Farmer provided legal services to Ivy, Farmer's counsel's repeated references to "a potential proceeding" or "potential PCR motion" in Ivy's case are, at a minimum, confusing. (*See, e.g.*, Respondent's Br. at 8, 16, 18.)

copied some court records. In January and March 2004, he drove to Muncie to review trial exhibits, and he met with Ivy's trial attorney in March 2004. In July 2004, he met with Ivy again in prison. Sometime before March 2005, Farmer went to an Indiana prison to talk with Ivy's co-defendant, but that meeting was cut short when Farmer learned the co-defendant was represented by counsel. In March 2005, Farmer traveled to Muncie and met and talked with the co-defendant's attorney, and the two visited the murder scene. Later, Farmer made another trip to northern Indiana to interview the co-defendant.

As the result of grievances filed in Ohio by former clients, a disciplinary complaint was filed against Farmer in Ohio by December 9, 2004. That complaint led to a decision issued on November 1, 2006, suspending Farmer's license to practice law in Ohio from November 1, 2006, until April 1, 2008. Thereafter, Farmer was on probation in Ohio from April 1, 2008, to June 5, 2009.

Soon after being suspended, Farmer sent letters to Ivy and Eddie (Laverne had passed away by then) advising them of the suspension and suggesting that they find another attorney. Eddie advised Farmer that he still wanted Farmer to obtain an affidavit from a witness in Muncie as they had earlier planned. After the Ivys located that witness, Farmer and Eddie drove toward Muncie for the purpose of talking to that witness and collecting an affidavit from her. But Farmer and Eddie learned in transit through a telephone call that the witness was not available, and so they cut short their trip. (App. at 22.)

After Farmer's suspension ended in April 1, 2008, Farmer and Eddie discussed whether Farmer should resume work on Ivy's case. In June 2008, Farmer and Eddie met with Ivy in prison to discuss the matter. At that meeting, Farmer and Ivy agreed that Farmer would continue work on the case on a *pro bono* basis. (App. at 23, 235.) However, sometime in early 2009, Ivy filed a grievance against Farmer with the Ohio Supreme Court Disciplinary Counsel, prompting Farmer to terminate their agreement.[2]

---

[2] The Ohio Supreme Court Disciplinary Counsel ("Ohio Counsel") eventually dismissed Ivy's grievance. In the dismissal letter, Ohio Counsel rejected Ivy's claim that Farmer had done "nothing" for Ivy and stated that Farmer had done a "considerable amount" of work on Ivy's behalf. (App. at 202.) When the Indiana Supreme Court Disciplinary Commission later inquired, Ohio Counsel responded, "With respect

At no time during his post-conviction work for Ivy did Farmer apply for temporary ("*pro hac vice*") admission in connection with Ivy's pending post-conviction relief petition.[3]

Other relevant facts are discussed below.

## Discussion

"Original actions . . . to restrain or enjoin the unauthorized practice of law in this state may be brought in this court by the attorney general, the Indiana Supreme Court Disciplinary Commission, and the Indiana State Bar Association or any duly authorized committee thereof, without leave of court . . . ." Admis. Disc. R. 24. "The purpose of a proceeding under Admission and Discipline Rule 24 is not to find fault or assess liability but to protect the public from those not properly licensed or otherwise qualified to act as attorneys." State ex rel. Indiana State Bar Ass'n v. Northouse, 848 N.E.2d 668, 674 (Ind. 2006).

An action to enjoin the unauthorized practice of law "shall charge specifically the acts constituting the unauthorized practice." Admis. Disc. R. 24. Here, after setting forth factual background information, the Commission's verified petition alleged specifically:

**ACTS CONSTITUTING THE UNAUTHORIZED PRACTICE OF LAW**

41. Farmer engaged in the unauthorized practice of law when, not being admitted to practice law in the State of Indiana, he provided legal services to an Indiana inmate regarding an Indiana legal matter for a period of approximately three (3) years.

42. Farmer further engaged in the unauthorized practice of law when, while suspended from the practice of law in Ohio, he traveled to Indiana for the purpose of interviewing and collecting an affidavit from a witness.

(Pet. at 5 (bold emphasis in original).)

---

to the licensing issue, we believe that Attorney Farmer's actions fall within Rule 5.5 since he was engaging in an investigation and non-litigation activity." (App. at 206.) Indiana's version of Professional Conduct Rule 5.5 is discussed below.

[3] *See* Ind. Admission and Discipline Rule 3(2).

The Court examines the Commission's claims in each of these two paragraphs, considering the evidence in light of the Commission's burden of proof. *See* State ex rel. Ind. State Bar Ass'n v. Diaz, 838 N.E.2d 433, 438 (Ind. 2005) (adopting commissioner's findings of fact where supported by clear and convincing evidence). Here, the parties agree that the Commission bears the burden of proof by clear and convincing evidence. (Respondent's Br. at 1, 8; Ind. Sup. Ct. Oral Argument Tr. at 50:01-50:07.) Accordingly, the Court applies that burden of proof here.

The "clear and convincing" standard is an intermediate standard of proof that lies between the "preponderance of the evidence" standard used in most civil proceedings and the "beyond a reasonable doubt" standard required to find guilt in criminal prosecutions. *See* J.C.C. v. State, 897 N.E.2d 931, 934 (Ind. 2008). Clear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty. Id. at 935; Carnahan v. Moriah Property Owners Ass'n, Inc., 716 N.E.2d 437, 443 (Ind. 1999).

A.      *Paragraph 41: The Three-Year Period*

The Commission alleged in Paragraph 41 of its verified petition that Farmer engaged in the unauthorized practice of law when he provided post-conviction legal services to Ivy for a period of approximately three years without being admitted to practice law in Indiana. That paragraph does not specify exactly to which three-year period the Commission is referring. However, it may be gleaned from the other parts of the verified petition and from the Commission's brief that the Commission is referring to the roughly three-year period between the Engagement Agreement and the beginning of the Ohio suspension.[4]

---

[4] *See* Relator's Br. at 4 ("For three years, from October 2003 to October 2006, [Farmer] provided legal services to Ivy relating to his pending post-conviction relief matter[.]"); *see also* Pet. at 2 ("In or about October 2003, . . . the Ivys . . . retained Farmer to review the record in Ivy's case and attempt to find evidence to support legal claims to help Ivy."). At oral argument, the Commission stated that Farmer engaged in unauthorized practice of law in Indiana before, during, *and after* his Ohio suspension, but it does not appear that unauthorized practice *after* his Ohio suspension was charged specifically in the verified petition. *See* Pet. at 5. In any event, the Court's analysis for the period after the suspension would not differ materially from the analysis for the three-year period before his Ohio suspension.

6

The Commission claimed that Farmer's conduct before his suspension amounted to unauthorized practice of law because he did not apply to be admitted on a temporary basis under Indiana Admission and Discipline Rule 3(2) and he was not otherwise authorized to practice law under the standard set out in Indiana Rule of Professional Conduct 5.5(c)(2). The latter rule provides:

> (c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services *on a temporary basis* in this jurisdiction that: . . . .
>
> (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding *or reasonably expects to be so authorized*[.]

Prof. Cond. R. 5.5(c)(2) (West 2012) (emphasis added).[5]

The accompanying commentary restates the rule and provides a few illustrative examples of permissible conduct:

> Paragraph (c)(2) . . . provides that a lawyer rendering services in this jurisdiction on a temporary basis does not violate this Rule when the lawyer engages in conduct in anticipation of a proceeding or hearing in a jurisdiction in which the lawyer is authorized to practice law or in which the lawyer reasonably expects to be admitted pro hac vice. Examples of such conduct include meetings with the client, interviews of potential witnesses, and the review of documents. . . . .

Prof. Cond. R. 5.5(c)(2), cmt. 10.

The Commission contends that Professional Conduct Rule 5.5(c)(2) does not authorize Farmer's conduct because providing legal services for three years is not "temporary." "Services may be 'temporary' even though the lawyer provides services in this jurisdiction on a recurring basis, or for an extended period of time, as when the lawyer is representing a client in a single lengthy negotiation or litigation." Prof. Cond. R. 5.5(c)(2), cmt. 6; *see* American Bar Association, Annotated Model Rules of Professional Conduct, Rule 5.5, at 465 (6th ed. 2007)

---

[5] This language was added to Professional Conduct Rule 5.5 by an order dated September 30, 2004, became effective January 1, 2005, and amended the language of the earlier version of the Rule 5.5. Because the Commission and Farmer both invite the Court to analyze Farmer's conduct under the standard set out in the language of this current version of the rule, the Court does so here.

(commenting that Rule 5.5 does not specify the number of visits a lawyer may make to another jurisdiction or any other bright-line test to determine when a lawyer's presence is "'temporary' rather than permanent" and noting that a report to the House of Delegates stated that application of the rule's standards "leaves room for individual opinion and judicial interpretation.").

Here, the charged conduct of Farmer involves occasional visits to Indiana for a single client in a single legal matter, not multiple matters or clients or any systematic or continuous presence in Indiana. Under these circumstances, the Court concludes that the Commission has failed to prove by clear and convincing evidence that Farmer's provision of legal service to Ivy was more than "temporary."

The Commission's other argument with regard to this phase is that Farmer could not have reasonably expected to be authorized to appear in Ivy's post-conviction case because, at least beginning in December 2004, "Farmer had no reasonable belief that he could gain temporary admission to practice in the State of Indiana due to a pending disciplinary proceeding in Ohio." (Pet. at 5; *see* Relator's Br. at 8.)

This argument, too, fails. A temporary admission of an out-of-state lawyer pursuant to Admission and Discipline Rule 3(2) is within the discretion of the trial court. Matter of Fieger, 887 N.E.2d 87, 90 (Ind. 2008). Nothing in this temporary admission rule *per se* disqualified Farmer from seeking admission in Ivy's post-conviction case simply because a disciplinary proceeding was pending against Farmer in Ohio. *See* Admis. Disc. Rule 3(2)(a)(4)(v) (listing requirements for seeking temporary admission to appear in an Indiana case or proceeding, including stating "[t]hat no disciplinary proceeding is presently pending against the attorney in any jurisdiction; *or, if any proceeding is pending*, the petition shall specify the jurisdiction, the charges and the address of the disciplinary authority investigating the charges." (emphasis added)).

Here, Farmer testified that he understood Admission and Discipline Rule 3(2) to mean that a *pending* disciplinary complaint in Ohio would not have precluded him from seeking, or an Indiana court from granting, temporary admission. (Tr. at 310.) Other evidence showed that

Farmer had been admitted to practice law in Ohio in 1999. He had been admitted on a temporary basis in another Indiana case fairly recently, in 2002-03. In the present proceeding, a federal judge and an attorney in Ohio who testified regarding Farmer's good character and competence as an attorney stated that they would have provided an affidavit supporting Farmer's request for temporary admission in Indiana if he had made one before or after his Ohio suspension.

Under these circumstances and in light of the discretion exercised by trial courts in ruling on motions for temporary admission under Admission and Discipline Rule 3(2), the Court concludes that the Commission has failed to prove by clear and convincing evidence that, due to the pending disciplinary proceeding in Ohio, Farmer could not have reasonably expected to be authorized to appear in Ivy's post-conviction case at some time in the future.

B.      *Paragraph 42: The Ohio-Suspension Period*

The Commission has failed to prove that Farmer engaged in the unauthorized practice of law during his suspension by traveling to Indiana for the purpose of interviewing and collecting an affidavit from a witness as alleged in Paragraph 42 of the Commission's petition.

As the Commissioner noted in his findings of fact, there was no evidence that Farmer and Eddie entered into Indiana on that occasion. More importantly perhaps, there was no evidence that Farmer *actually* interviewed the witness or collected her affidavit. It is the province of this Court to determine what acts constitute the practice of law. Matter of Contempt of Mittower, 693 N.E.2d 555, 558 (Ind. 1998); *see* Matter of Patterson, 907 N.E.2d 970, 971 (Ind. 2009) (noting that while this Court has not attempted to provide a comprehensive definition of what constitutes the practice of law, it is clear that the core element of practicing law is giving legal advice to a client, and that the practice of law has been described as making it one's business to act for others in legal formalities, negotiations, or proceedings). The Court concludes that Farmer's conduct of traveling toward Indiana, even for the purposes alleged in Paragraph 42 of the verified petition, does not constitute the practice of law in Indiana.

9

## Conclusion

The Commission has failed to meet its burden of demonstrating that an injunction should issue against Farmer. Accordingly, the Court denies the Commission's verified petition.[6] The costs and expenses incurred by the hearing in this matter shall be borne by the Commission. *See* Admis. Disc. R. 24.

Dickson, C.J., and Rucker, Massa, and Rush, JJ., concur.

David, J., concurs in result without separate opinion.

---

[6] After this matter was fully briefed and oral argument was scheduled, the Commission moved to strike one statement of fact from Farmer's response brief and claimed the record does not support that statement of fact. Farmer's counsel responded by acknowledging she had misstated the evidence on that one particular point, apologized for the error, and argued that striking the statement in question was unnecessary. The Commission easily could have raised this issue in oral argument rather than filing a motion to strike, if it believed the issue important. In any event, given the parties' exchange described above, the Court denies the motion to strike as moot.