ATTORNEY FOR APPELLANT
Brent Westerfeld
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

_____

## In the
## Indiana Supreme Court

**FILED**
Jul 01 2013, 10:20 am

CLERK
of the supreme court,
court of appeals and
tax court

_____

No. 47S01-1302-JV-126

N.L.

*Appellant (Respondent below),*

v.

STATE OF INDIANA,

*Appellee (Petitioner below).*

_____

Appeal from the Lawrence Circuit Court, No. 47C01-1011-JD-505
The Honorable Andrea K. McCord, Judge
James F. Gallagher, Juvenile Referee

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 47A01-1205-JV-245

_____

**July 1, 2013**

**Rush, Justice.**

Sex-offender registration aims to protect innocent members of society from repeat sex offenses by formerly convicted sex offenders, while our juvenile system aims to rehabilitate juvenile offenders. To balance these competing goals in light of registration's serious social consequences and far-reaching effects, trial courts may place a child on the sex offender registry only if they first find by clear and convincing evidence that the child is likely to repeat a sex offense. But our trial courts have struggled with how to apply that statutory requirement. Today, we clarify that a

juvenile may only be ordered to register as a sex offender if, after an evidentiary hearing, the trial court expressly finds by clear and convincing evidence that the juvenile is likely to commit another sex offense. Because the trial court's order here placing N.L. on the registry was neither issued in connection with an evidentiary hearing, nor accompanied by any findings, we reverse and remand.

**Facts and Procedural History**

N.L. admitted to conduct that would constitute D-felony sexual battery if committed by an adult. He was placed in the Resolute Treatment Facility (Resolute), an inpatient program for sexually maladaptive youth, and after eight months successfully completed treatment there. Then in January 2012, he was moved to the Jackson County Juvenile Home (Group Home).

In February 2012, the trial court held a hearing to determine whether to place N.L. on the sex offender registry. N.L. was represented by counsel. The State introduced Resolute's Risk Evaluation report, indicating N.L. had a "moderate level of risk to reoffend," which would be reduced if he successfully transitioned into the group home, was involved in school activities, developed positive peer relationships, and participated in family therapy.

The co-authors of the Risk Evaluation report also testified at the registry hearing. First, Resolute's Clinical Director explained that the ERASOR[1] quantified N.L.'s "moderate" risk of sexual recidivism as four to six percent — reduced from his ten percent risk on that same instrument before treatment began, and well below the average recidivism rate of six to twelve percent for "any kid getting treatment for sexually maladaptive behavior." In the Director's experience, registration is typically only required for juveniles with a projected recidivism rate of 15 percent or more. The Director explained that N.L. was "at a really decreased risk" that could continue to fall still further with continued treatment. And in turn, Resolute's Clinical Therapist testified that N.L. had successfully completed treatment at Resolute, and would continue treatment three times per week for another six to nine months.

Additionally, the Group Home's Assistant Program Director testified that N.L. was successfully transitioning into the group home, involved in school activities, developing positive

---

[1] ERASOR is the Estimate of Risk of Adolescent Sexual Offense Recidivism, a structured risk-assessment testing instrument for adolescent sex offenders.

peer relationships, and participating in family therapy — all the steps the Risk Evaluation report said would reduce N.L.'s risk of reoffending.

At the conclusion of the February hearing, N.L.'s counsel argued in opposition to placing him on the registry. The trial court did not decide whether to require N.L. to register, and instead announced it would "take the Registry matter under advisement until" a subsequent review hearing. But the next review hearing, held in late March, apparently did not address the pending registry decision — there is no such indication in the "Review Hearing Update" filed that date, nor did N.L.'s Notice of Appeal request a transcript of that hearing.

The only other hearing thereafter was held in late May 2012. At that hearing, the only testimony was the victim's mother's request that N.L. be ordered to register. There was no updated evidence of N.L.'s likelihood to reoffend, nor further argument on that point. And this time, unlike the February hearing, N.L. was not represented by his attorney. At the conclusion of the May hearing, while reading the standard terms of probation to N.L., the court ordered N.L. to register. It did not make any written or oral findings of whether clear and convincing evidence supported that N.L. was likely to repeat a sex offense.

N.L. appealed, arguing there was insufficient evidence that he was likely to repeat a sex offense. The Court of Appeals affirmed the registration order in an unpublished decision, finding that N.L.'s "moderate" risk of reoffending supported registration. N.L. v. State, No. 47A01-1205-JV-245 (Ind. Ct. App. Nov. 26, 2012). The Court of Appeals also found sufficient evidence to support registration, based on information gathered during N.L.'s treatment and presented during previous informal review hearings: (1) N.L.'s adoptive mother may not be able to properly supervise him upon his release; (2) N.L. viewed pornography twice while on a home visit during treatment at Resolute; and (3) N.L. had some behavior problems while at the Group Home, though the record does not reflect whether the problems were sexual in nature. The record also does not indicate that any information from the informal review hearings was introduced into evidence at either the February or May 2012 hearing.

### Standard of Review

Whether the trial court's registration order meets the requirements of the Sex Offender Registration Act is a matter of statutory interpretation. Statutory interpretation presents a pure

question of law we review *de novo*. <u>Nicoson v. State</u>, 938 N.E.2d 660, 663 (Ind. 2010). Our primary goal in interpreting any statute is to effectuate legislative intent. <u>Walczak v. Labor Works-Ft. Wayne LLC</u>, 983 N.E.2d 1146, 1154 (Ind. 2013). "If a statute is clear and unambiguous, courts do not apply any rules of construction other than giving effect to the plain and ordinary meaning of the language." <u>Sloan v. State</u>, 947 N.E.2d 917, 922 (Ind. 2011).

### Sex Offender Registration and Juvenile Justice

In the wake of a convicted sex offender molesting and murdering ten-year-old Zachary Snider, the Indiana General Assembly passed the Sex Offender Registration Act, known as "Zachary's Law." Act of March 2, 1994, Pub. L. No. 11-1994; <u>Wallace v. State</u>, 905 N.E.2d 371, 374–75 & n.4 (Ind. 2009). The Act requires sex offenders residing within Indiana to register with local law enforcement and have their photograph taken each year, among many other requirements. Ind. Code § 11-8-8-7(b). This information is then published on the searchable sex offender registry website. I.C. § 11-8-8-7(i). One goal of the Act is "to give the community notification necessary to protect its children from sex offenders." <u>Wallace</u>, 905 N.E.2d at 383. But registration also undoubtedly "promote[s] community condemnation of the offender," <u>id.</u> at 382 (internal quotation omitted), and subjects "offenders to 'vigilante justice' which may include lost employment opportunities, housing discrimination, threats, and violence," <u>id.</u> at 380. Still, courts generally hold that "[t]he purpose and the principal effect of notification are to inform the public for its own safety, . . . and the [offender's] attendant humiliation is but a collateral consequence of a valid regulation." <u>Smith v. Doe</u>, 538 U.S. 84, 99 (2003); <u>accord</u>, <u>e.g.</u>, <u>Vickery v. State</u>, 932 N.E.2d 678, 682 (Ind. Ct. App. 2010) (quoting <u>Smith</u>).

Yet both the goals and practical effects of sex-offender registration are in tension with the juvenile justice system's policy of treating juvenile delinquents "as persons in need of care, protection, treatment, and rehabilitation." I.C. § 31-10-2-1(5). "[T]he State's primary interest [is] rehabilitation, rather than the punishment of juvenile delinquents." <u>J.C.C. v. State</u>, 897 N.E.2d 931, 935 (Ind. 2008). For children, the effect of registration is particularly harsh because while some juvenile court records are confidential, I.C. § 31-39-1-2, registration reveals their delinquent acts to the world and exposes them "to [the] profound humiliation and community-wide ostracism" that registration entails. <u>Wallace</u>, 905 N.E.2d at 380. Indeed, requiring juveniles to register "may particularly hamper the[ir] rehabilitation . . . because the public stigma and rejection they suffer

4

will prevent them from developing normal social and interpersonal skills — the lack of [which] ha[s] been found to contribute to future sexual offenses." Michele L. Earl-Hubbard, <u>The Child Sex Offender Registration Laws: The Punishment, Liberty Deprivation, and Unintended Results Associated with the Scarlet Letter Laws of the 1990s</u>, 90 Nw. U. L. Rev. 788, 855–56 (1996). The stakes of juvenile sex-offender registration, then, are significantly different than where adult offenders are involved.

**Juvenile Sex Offender Registration Procedures**

The Sex Offender Registration Act implicitly recognizes, and attempts to balance, the tension between registration's harsh effects and the juvenile system's rehabilitative aims. Unlike adult sex offenders, who must register "without regard to whether the individual poses any particular future risk," <u>Wallace</u>, 905 N.E.2d at 384, placing a child on the registry requires an individual assessment of whether that child is likely to repeat a sex offense — specifically, that the child:

> (A) is at least fourteen (14) years of age;
>
> (B) is on probation, is on parole, is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31-9-2-115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be an offense described in subsection (a) if committed by an adult; and
>
> (C) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

I.C. § 11-8-8-5(b)(2). This case implicates two issues under subpart (b)(2)(C): what sort of hearing a trial court must conduct before a juvenile is "found . . to be likely to" reoffend, and what form of "finding" is required. We address each issue in turn.

**I.  What Does an "Evidentiary Hearing" Require?**

*A.  Juvenile Hearings Generally.*

Broadly speaking, juvenile delinquency hearings may take two forms. Many juvenile hearings are conducted informally, and are not strictly governed by the rules of evidence. First, by the terms of Indiana Evidence Rule 101(c)(2), the Rules do not apply to "preliminary juvenile matters" — for example, hearings to determine the reliability of a child's hearsay testimony under the Protected Person Statute, <u>L.H. v. State</u>, 878 N.E.2d 425, 430 (Ind. Ct. App. 2007). Similarly,

hearsay is admissible in dispositional hearings, and subsequent hearings to modify a disposition, because "[e]xcluding hearsay evidence . . . would in many cases disserve the child by excluding relevant information that might support a less restrictive disposition." In re L.J.M., 473 N.E.2d 637, 643 (Ind. Ct. App. 1985). At these hearings, the court may also admit any predispositional report into evidence to the extent it is probative, "even if the report would otherwise be excluded." I.C. § 31-37-18-2(a) (governing dispositional hearings); I.C. § 31-37-21-3(a) (governing reports prepared for review or modification hearings).

By contrast, other juvenile matters are of such gravity that formal evidentiary hearings are required. For example, "fact-finding hearings" under Indiana Code 31-37-13 are held to determine whether the allegations of a delinquency petition are true — analogous to a criminal trial. At evidentiary hearings, the rules of evidence apply to the same extent as in a criminal case, even though juvenile hearings are civil in nature. E.g., J.R.T. v. State, 783 N.E.2d 300, 306 (Ind. Ct. App. 2003), trans. denied (barring polygraph evidence on hearsay grounds, unless parties have stipulated its admissibility); K.F. v. State, 961 N.E.2d 501, 514–15 (Ind. Ct. App. 2012), trans. denied (finding error in admission of hearsay contrary to Indiana Evidence Rule 801). As discussed below, juvenile sex-offender registration hearings under Indiana Code section 11-8-8-5 fall into this latter category, in which formal hearings consistent with the Rules of Evidence are required. Z.H. v. State, 850 N.E.2d 933, 940 n.2 (Ind. Ct. App. 2006), trans. denied.

### B. Sex-Offender Registration Hearings Specifically.

We explored some aspects of the hearing requirement in J.C.C., where we noted that the individualized assessment of whether the child is likely to reoffend "requires the court to hold an evidentiary hearing," 897 N.E.2d at 934, which must await the child's release from secure detention so the court can evaluate whether the child has been rehabilitated, id. We also emphasized that "clear and convincing" evidence is required because "the wisdom of experience has demonstrated the need for greater certainty" in view of the "serious social consequences" and "harsh or far reaching effects on individuals" of being on the registry. Id. at 934–35, quoting Estate of Reasor v. Putnam Cnty., 635 N.E.2d 153, 159 (Ind. 1994).

But here, the trial court's order to register was not issued in connection with the type of "evidentiary hearing" that J.C.C. requires. We recognize that at the February hearing, where N.L. was represented by counsel, the court did receive evidence that N.L. posed a "moderate risk" of

reoffending — but the court chose not to issue a registration order at that time. Under the circumstances, it was well within its discretion to postpone the decision, since the evidence also suggested that N.L.'s risk of reoffending was likely to decrease as treatment continued. Yet when the hearing resumed three months later, the court received no evidence relevant to whether N.L.'s "moderate" risk had decreased as predicted, nor any other evidence of any kind apart from a victim-impact statement. Moreover, the May hearing was conducted as an informal "review hearing," at which N.L. was not represented by his attorney who was present at the February hearing — thus giving him no meaningful opportunity to challenge the State's evidence or present evidence of his own. An "evidentiary hearing" is a prerequisite to placing a child on the registry, and while the February hearing met that standard, its continuation in May did not. Again, it was well within the trial court's discretion to continue the February registry hearing to develop further evidence of whether N.L. had rehabilitated — but once it had done so, each continuation of the hearing had to meet the same standard for an "evidentiary hearing" before issuing its decision on whether N.L. must register.

The Court of Appeals nevertheless found that "substantial evidence" supported registration, based on the evidence of N.L.'s "moderate" risk presented at the February hearing, plus evidence presented at previous review hearings early in N.L.'s treatment. But those earlier informal review hearings cannot substitute for the evidentiary hearing the statute requires, because N.L. had no opportunity to challenge that evidence or present opposing evidence at the time it was received. Without that basic safeguard, the right to an "evidentiary hearing" would ring hollow. Information or reports received at informal review hearings are not an appropriate substitute for deciding a matter as weighty as whether to require a juvenile to register as a sex offender.

In sum, an "evidentiary hearing" under J.C.C. requires at a minimum that juveniles have an opportunity to challenge the State's evidence and present evidence of their own; that any continuation of the hearing meet these same requirements, including continued representation by counsel; and that the registration decision must be based solely on information admitted into evidence at such a hearing.

## II. How Must a Juvenile Be "Found" Likely to Commit Another Sex Offense?

The other issue in this case presents an open question, because J.C.C. did not examine what form of "finding" is entailed by the requirement that a child must be "found" likely to reoffend

before being placed on the registry. I.C. § 11-8-8-5(b)(2)(C). But requiring a fact to be "found" would be meaningless, at least for purposes of appellate review, unless that finding is made expressly. In this context, that finding draws the key distinction between juvenile and adult offenders, and the statute underscores its importance by requiring "clear and convincing evidence." But since the trial court did not make this "required finding," State v. K.H., 860 N.E.2d 1284, 1288 (Ind. Ct. App. 2007), it is impossible to determine on review whether the trial court properly applied the heightened evidentiary standard — or even whether it was making an individualized determination, as the statute requires. We therefore hold that a court must *expressly* find, by clear and convincing evidence, that a juvenile is likely to reoffend before it may place the juvenile on the sex offender registry.

### III. What Is the Remedy for a Deficient Hearing and Inadequate Findings?

Since the hearing that preceded the trial court's order to register was not "evidentiary," nor did the court expressly find by clear and convincing evidence that N.L. was likely to reoffend, we reverse the registration order. But the closer question is whether we may remand to the trial court to reconsider whether to place N.L. on the registry. We believe that remand best serves both of the competing policies at issue — sex-offender registration and juvenile justice alike. As discussed above, even though sex-offender registration often has harsh effects on offenders, its primary intent is to protect the public. If an offender, even a juvenile, poses an individualized likelihood of reoffending, then registration is warranted to protect the public — and at least one reported decision has upheld a registration order that was, in part, based on a juvenile's "moderate" risk of reoffending. B.W. v. State, 909 N.E.2d 471, 479 (Ind. Ct. App. 2009). Conversely, if the predictions made at N.L.'s February hearing hold true, and his risk of sexual recidivism has continued to decrease, then the rehabilitative purposes of our juvenile system are best served by ensuring that the trial court has an opportunity to consider any such pattern. But again, in the absence of an express finding one way or the other, we are ill-equipped to review the trial court's decision. We therefore remand this case to the trial court with the instructions set forth below.

### Conclusion

It is well within a trial court's discretion to hold more than one hearing to determine whether a juvenile's risk of reoffending warrants placing them on the sex offender registry. But

when it does so, *every* hearing held for that purpose must be an "evidentiary hearing" as <u>J.C.C.</u> requires. That is, juveniles must have the opportunity to challenge the State's evidence and present evidence of their own; and if an "evidentiary hearing" is continued, they must have continued representation by counsel at the subsequent hearings as well. Finally, the child may not be ordered to register unless the trial court *expressly* finds, by clear and convincing evidence, that the child is likely to commit another sex offense — based exclusively on evidence received at such a hearing. Here, the May hearing was not an "evidentiary hearing" as <u>J.C.C.</u> requires; N.L. did not have the benefit of counsel in May, even though he did for the February hearing; and the trial court made no findings about N.L.'s likelihood to reoffend.

We therefore reverse the order requiring N.L. to register as a sex offender, and remand to the trial court with instructions to conduct a new "evidentiary hearing" as <u>J.C.C.</u> requires to determine whether N.L. is likely to commit another sex offense, and thereafter to make an express finding of whether the State has made that showing by clear and convincing evidence.

Dickson, C.J., and Rucker, David, and Massa, JJ., concur.

9