# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 28 2015, 8:43 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael C. Ice
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

J.B.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 28, 2015

Court of Appeals Case No.
55A01-1411-JV-483

Appeal from the Morgan County
Superior Court;
The Honorable Christopher L.
Burnham, Judge;
55D02-1106-JD-242

**May, Judge.**

[1] J.B. appeals the requirement he register as a sex offender, claiming there was insufficient evidence to support the order. Concluding there was clear and convincing evidence J.B. is likely to repeat an act that would be a sex offense, we affirm.

## Facts and Procedural History

[2] When J.B. was thirteen years old, he touched and fondled the genitals of his six-year-old half-brother. Around the same time, J.B. "poked" his half-sister, who was then fifteen years old, with his penis after lowering her pants and panties while she allegedly slept. (State's Ex. 3.) On June 13, 2011, the State filed a petition of delinquency, alleging that J.B., while he was under the age of fourteen, committed what would be Class C felony child molesting if committed by an adult.[1] The trial court adjudicated J.B. a delinquent child based on his admission that he committed those acts.

[3] On September 15, 2011, J.B. completed an adolescent sexual offender evaluation that determined he was at a moderate to high risk for reoffending and recommended a residential placement. The juvenile court ordered J.B. to be placed at Lexington Academy. J.B. did not progress with his treatment at Lexington Academy; he had issues dealing with others and showed an inconsistent pattern of change.

[4] On September 17, 2012, the court terminated J.B.'s placement at Lexington Academy, ordered him to undergo a diagnostic evaluation, and then temporarily committed J.B. to the Department of Correction (DOC). On October 29, 2012, the

---

[1] Ind. Code § 35-42-4-3(b) (2007).

court ordered J.B. placed in Resolute Treatment Facility. While there, J.B. was removed from therapeutic groups due to non-compliance, threatening his therapist, attacking his teacher, verbally abusing and bullying peers, and being in a physical altercation with a peer.

On March 6, 2013, the court ordered J.B. be committed to the DOC and placed in the Pendleton Juvenile Correctional Facility. J.B. initially displayed behavioral problems while in DOC, but then showed significant improvement in behavior and successfully completed his sex offender program.

On June 20, 2014, the State filed a Motion for Hearing Regarding Sex Offender Registration Determination. Expert witness Dr. Floyd F. Robinson, who is a licensed Indiana psychologist, has expertise in the area of psychopathology and psychodiagnostics, and has conducted between fifteen and twenty psychosexual evaluations. After reviewing all the reports and documents from Lexington Academy, Resolute, and the DOC, Dr. Robinson concluded there was a significant likelihood that J.B. would sexually reoffend within the next five years. Based on Dr. Robinson's conclusion and other evidence, on October 9, 2014, the trial court ordered J.B. to register as a sex or violent offender for a period of ten years.

## Discussion and Decision

J.B. argues the State did not establish by clear and convincing evidence that he was likely to be a repeat sex offender. When judging the sufficiency of the evidence supporting a decision to place a juvenile on a sex offender registry, we neither reweigh the evidence nor judge the credibility of the witnesses. *Z.H. v. State*, 850

N.E.2d 933, 936 (Ind. Ct. App. 2006), *trans. denied*. Instead, we look to the evidence and the reasonable inferences that can be drawn therefrom that support the decision, and we will affirm if there is clear and convincing evidence from which the juvenile court could find the elements of the Indiana Sex Offender Registration Act (INSORA) have been met. *R.G. v. State*, 793 N.E.2d 238, 240 (Ind. Ct. App. 2003), *trans. denied*.

[8] INSORA requires a sex offender to register with local law enforcement authorities in the area where the offender resides. *See M.L.H. v. State*, 799 N.E.2d 1, 3 (Ind. Ct. App. 2003); *see also* Ind. Code § 11-8-8-7 (referring to the registry requirements for a sex offender). A juvenile may be found to be a sex offender under INSORA if he is:

> A child who has committed a delinquent act and who:
>
> > (A) is at least fourteen (14) years of age;
> >
> > (B) is on probation, is on parole, is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31-9-2-115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be an offense described in subsection (a) if committed by an adult; and
> >
> > (C) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

Ind. Code § 11-8-8-5(b)(2) (2007) (footnote added). J.B. concedes he was at least fourteen and the act he committed, child molesting, is listed in subsection (a); thus, he challenges only that there was clear and convincing evidence he is likely to commit another offense.

[9] In deciding whether to place a juvenile on a sex offender registry, a juvenile court "shall consider expert testimony" concerning whether a juvenile is a likely to reoffend. Ind. Code § 11-8-8-5(c) (2007). Thus, before a juvenile may be ordered to register as a sex offender, the juvenile court must hold an evidentiary hearing and find by clear and convincing evidence that the juvenile is likely to commit another sex offense. *See J.C.C. v. State*, 897 N.E.2d 931, 934 (Ind. 2008); *see also* Ind. Code § 11-8-8-5(b)(2) (2007). "[T]he Legislature has dictated this heightened burden of proof . . . in recognition of the serious social consequences of sex offender registration . . . ." *J.C.C.*, 897 N.E.2d at 934.

[10] When a juvenile is placed in a secure private facility, a sex offender registry hearing can be conducted only after the juvenile has been released from the facility. *Id*. The legislative intent behind holding a hearing upon the juvenile's release "is to hold the sex offender registration determination in abeyance so that the juvenile has the opportunity to be rehabilitated during detention." *Id*. *See also In re G.B.*, 709 N.E.2d 352, 354 (Ind. Ct. App. 1999) ("This statutory scheme helps insure that juveniles who have been rehabilitated by virtue of their detention are not required to register as a sex offender.").

[11] At the evidentiary hearing, the juvenile court took judicial notice of the underlying court documents and heard from J.B.'s probation officer and the expert witness, Dr. Robinson. J.B.'s probation officer was concerned with the number of reports from the DOC that J.B. did not cooperate with treatment and did not complete assignments given to him in his treatment. Dr. Robinson reviewed all of J.B.'s records and evaluated him based on eight attributes: age, history, previous offenses,

anger, resistance to authority, socialization, presence of gross psychiatric disturbance, and successful treatment. J.B. exhibited all but one of the attributes, which indicates a high likelihood J.B. would sexually reoffend within the next five years.

[12] J.B. was young when he committed his first sexual offense. He displayed anger throughout his treatment, which is associated with an increased likelihood he would reoffend. He assaulted a teacher, threatened his therapist, physically assaulted a peer, and verbally attacked and bullied other peers. J.B. committed hundreds of infractions while he was committed to the DOC, ranging from assault and sexual misconduct to bullying and insulting. Dr. Robinson acknowledged that J.B. completed his treatment program at the DOC, but he believed that J.B. did not benefit from the program. Dr. Robinson concluded J.B. was not adequately rehabilitated and was at a significantly increased risk to sexually reoffend within five years.

[13] Dr. Robinson testified that the most important factor he considered was the effect treatment had in J.B.'s rehabilitation. Although J.B. completed the DOC treatment program, his participation was marked with major and minor infractions, and the exit assessment completed by the DOC put J.B. at a high risk to reoffend. According to Dr. Robinson, completing the DOC's treatment program did not rehabilitate J.B.

[14] There was clear and convincing evidence that J.B. was likely to commit another sexual offense. The DOC's reentry tool evaluated J.B. to be at a high risk to reoffend. Dr. Robinson reviewed all records and determined there was an eighty percent chance J.B. would reoffend within five years. This was sufficient evidence to

support the decision to place J.B. on the sex offender registry. *See B.W. v. State*, 909 N.E.2d 471, 480 (Ind. Ct. App. 2009) (concluding under similar circumstances there was clear and convincing evidence that defendant was likely to repeat a sex offense).

## Conclusion

The juvenile court did not err in concluding there is clear and convincing evidence J.B. is likely to commit another sex offense. We accordingly affirm.

Affirmed.

Robb, J., and Mathias, J., concur.